# STATE ex rel. INGA PEDERSON v. WILLIAM WATTS and Another.[1]

December 29, 1911.

Nos. 17,264—(8).

**Judicial ditch — requisites of petition.**

Chapter 230, Laws 1905, as amended by section 2, c. 469, Laws 1909, requires that a petition for a drainage ditch shall set forth the necessity thereof, and that it will be a public benefit and promote the public health. *Held*, the petition here involved did set forth that the ditch will be a public benefit, and also that it will promote public health.

**Alteration of routes and termini.**

The drainage law permits the engineer, if the bondsmen consent thereto in writing, to substantially alter the starting points, routes, and termini of a proposed drain, and to plan for the different parts of the drain to flow in different directions, with more than one outlet, making in fact more than one ditch, when he finds that better results can be obtained thereby in carrying out the drainage project involved in the ditch petitioned for.

**One proceeding may include disconnected ditches.**

Under this law, in a single judicial ditch proceeding, a main ditch and two disconnected subsidiary ditches may be established, if shown in the report of the engineer and found by the court, after a hearing had, to afford the most practicable means of draining an area adjacent to and reasonably capable of being drained by the main ditch and branches described in the petition.

**Same — question of fact.**

Such main and subsidiary ditches may constitute one ditch improvement. Whether they constitute one ditch improvement, or two or more independent ditch projects, is a question of fact, depending largely upon the topography of the area drained thereby. The area drained by the ditches here involved appears to be a single drainage basin, and the ditches to constitute a single drainage system.

[1] Reported in 133 N. W. 971.

[Note]   Procedure for establishment of drains and sewers, generally, see note in 60 L.R.A. 161.

**Consent of county commissioners.**

> The law does not require the consent of a board of county commissioners before a judicial ditch may be established, with an outlet into an existing ditch.

Upon the petition of Inga Pederson, this court granted a writ of certiorari directed to William Watts and Andrew Grindeland, as judges of the district court for the Fourteenth judicial district, to review the records of proceedings relating to the establishment of Judicial Ditch No. 25, in the district court for that district. The county board of Polk county appeared and moved for an order joining it as a party relator in the matter, and permitting it to file its brief and argument in opposition to the establishment of the ditch. Order of district court affirmed.

*W. E. Rowe,* for relator.

*Julius J. Olson* and *Charles Loring,* for respondents.

SIMPSON, J.

An order of the district court establishing judicial ditch No. 25 in the counties of Marshall, Red Lake, and Polk is before this court for review pursuant to a writ of certiorari.

The proceedings for the establishment of this ditch were begun by a petition. After a preliminary hearing on the petition in the district court, an engineer and viewers were appointed. Their reports were filed, and upon notice duly given a hearing was had upon the petition and reports. The court thereupon made its order locating and establishing the ditch in accordance with the engineer's report and specifications, and adopting the report of the viewers, as modified. The relator owns land near the proposed ditch, which land is assessed for benefits. The return to this court does not include all the evidence received on the hearing in the district court. The relator questions the sufficiency of the proceedings had to sustain the order establishing the ditch.

1. The point is raised that the petition is insufficient because it does not set forth that the proposed ditch "will be of public benefit and promote the public health," as required by section 2, c. 469,

p. 566, Laws 1909. It is not necessary that the petition make the required showing in the language of the statute. The petition here involved states in terms that the construction of the ditch will be a public benefit. It further states that "public health, convenience and welfare required the establishment of the ditch," and that the ditch is necessary, because the surface water collecting upon the territory adjoining the route of the proposed ditch "has no adequate means to be carried off," and causes great damage to "lands, public travel, and health." The petition, by this language, sufficiently states that the proposed drain will promote the public health.

2. The second point urged by relator raises an important question as to the proper construction and the scope of the drainage law. The source and outlet of the ditch, as laid [out] by the engineer and established by the court, are at points considerably distant from those designated in the petition, and in place of two branches to the main ditch, as designated in the petition, two minor ditches, with independent outlets, were laid out by the engineer and established by the court's order. The relator urges that the engineer was not authorized by law to thus materially depart from the line and terminal point of the ditch as designated in the petition, and that the court was without jurisdiction to establish the drainage ditch or system of ditches as laid out by the engineer.

The statutory petition is made by the drainage law a jurisdictional prerequisite to the authority of the county commissioners in case of a county ditch, and of the district court in case of a judicial ditch, to proceed in the matter of establishing such ditch. After filing, the effect of the petition in limiting the subsequent proceedings must be determined from the provisions of the drainage law.

Section 4, c. 230, p. 306, Laws 1905 [R. L. Supp. 1909, § 2651 —47], deals with the duties and powers of the engineer. It is somewhat involved, and contains a number of provisos relating to different conditions likely to be encountered as the accurate survey proceeds. Its general apparent purpose is to give the engineer authority to lay out the proposed ditch along practicable lines, and at the same time to prevent him from changing the improvement petitioned for and found to be necessary. It is provided: "In locat-

ing a public ditch, drain, creek or watercourse, or the branches thereof, the engineer may vary from the line described in the petition, or from the starting point thereof, as he deems best; provided, he commence the ditch at or as near the point described in the petition as is reasonably practicable and follow down the line therein described as nearly as practicable, and provided, further, that he shall have authority to specify such branch ditch or ditches as, in his opinion, may be necessary to give owners of lands likely to be assessed for the construction of the main ditch the full benefit thereof."

Section 4 further authorizes the engineer to specify such branch ditches, "as in his opinion may be necessary to give owners of lands likely to be assessed for the construction of the main ditch as originally petitioned for the full benefit thereof, and he shall do the same things and report the same data, tabulations and estimates with reference to said branches as are required by the chapter, with reference to the public ditch, drain, creek or watercourse, or the branches thereof, described in the original petition."

The same section makes these further provisions (p. 310): "Provided that the engineer, when it is desirable and practicable, and if the bondsmen for the petitioner agree thereto in writing, may provide for the drainage of lands not likely to be assessed for the ditch, originally petitioned for, by extending the ditch, or drain or watercourses beyond the limits named in the petition, or by putting in branches, and in such case the viewers shall assess benefits and damages to such additional lands.

"Provided, further that if the engineer finds that better results can be obtained, and if the bondsmen for the petitioners agree thereto in writing, he may substantially alter the starting points, routes and termini of such ditch, drain or watercourse, or he may plan for the different parts of the ditch, drain or watercourse to flow in different directions, with more than one outlet, making in fact more than one ditch."

In Lager v. County of Sibley, 100 Minn. 85, 110 N. W. 355, this court had before it a ditch proceeding in which the petition described a proposed ditch four miles long terminating in a mean-

dered lake. By the report of the engineer the ditch was extended to an outlet seven miles beyond this lake. It was held that this extension was not authorized by the statute.

In Jurries v. Virgens, 104 Minn. 71, 116 N. W. 109, it was held that, where a petition under the provisions of the drainage law calls for the laying out of a public ditch and designates the source and a proper outlet, the engineer and county commissioners have no authority to abandon the terminus as petitioned [for] and establish the same upon the land of a private owner, and that such private owner may enjoin the construction of the ditch as thus established.

It does not appear that in either of these cases the consent of the bondsmen of the petitioners had been obtained to the change in the route of the ditch as petitioned for, and the last provisions of the law quoted above were not involved. The decisions are based upon the law as limited by the provision first quoted above, requiring the engineer to locate the ditch so that it should follow down the line prescribed in the petition as nearly as practicable. In both of the above cases there was a clear departure from the drainage project involved in the ditch petitioned for, and in the case of Jurries v. Virgens such departure destroyed, to a large extent, the practicability and usefulness of the ditch.

Under the drainage law the engineer, by his appointment, is not given a roving commission to plan drainage improvements. The law requires one or more of the petitioners to give a bond, with sureties, to the county, conditioned to pay all expenses in case the county commissioners or the court shall fail to establish the proposed drain. The requirement that the engineer shall not materially change the course of the ditch protects these bondsmen, as well as the petitioners, and the board of county commissioners, or the court, against unwarranted departures by the engineer from the improvement petitioned for.

The provisions of section 4, however, authorizing the engineer under certain conditions to substantially alter the starting points, termini and course of the drain, are as essentially a part of the general law, and seem as directly in accord with the general purpose of the drainage act, as the provision limiting such changes under other

conditions. There is no uncertainty in these provisions. Authority is thereby clearly given the engineer, with the consent of the bondsmen, to extend the drainage area, and to substantially change the route of the proposed ditch, and to construct in lieu of one ditch more than one, with different outlets, if the engineer finds that better results can be obtained thereby. These provisions do not authorize the engineer to abandon the drainage project petitioned for and undertake a new project. It is only when it appears that better results can be obtained in carrying out the drainage project involved in the ditch petitioned for that the engineer is authorized, with the consent of the bondsmen, to make a substantial change in the course of the ditch.

In the instant case the bondsmen of the petitioners consented to changes by the engineer in the course of the ditch petitioned for.

The petition describes a ditch about forty miles long, beginning at the center of section 5, in township 154 north, of range 44 west, in Marshall county; thence extending south about two miles into Pennington county; thence west about five miles; thence south four miles; thence in a general westerly direction about twenty-five miles. From this point the petition asks that the ditch be extended for an outlet to the Red river, either directly west to the river, or north to judicial ditch No. 1 which is connected with the Red river. Two branches of the main ditch are petitioned for and described, one leaving the main ditch five and one-half miles west of the line of the starting point of the main ditch; thence extending north one mile into Marshall county; thence west seven miles and north one mile to a coulee. The petition states that the greater part of the water carried by this branch will flow at its western terminus into the coulee. A second branch is described, leaving the main ditch at a point where it is intersected by a coulee about twelve miles west of the line of the starting point of the main ditch, and extending south and east along this coulee about four miles; thence south about five miles.

The ditch, or rather ditches, as surveyed and specified by the engineer in his report, are as follows: The main ditch has its starting point on the course and seven miles west of the starting point of the

petition ditch. The course from this point does not materially differ from the petition ditch, except that it terminates in judicial ditch No. 1 at a point about seven miles east of the terminus of the main ditch as designated in the petition. Two subsidiary ditches are described in the engineer's report. One terminates in the same coulee that is designated by the petition as the terminus of the first branch of the main ditch. Its starting point is on the line of this branch as designated in the petition. It has two branches extending south and east in the direction of the main ditch. The second subsidiary ditch with two branches, originates near the starting point of the main ditch as described in the petition, and extends south and west and terminates in a river flowing to the south.

A comparison of the route of the ditch and branches as described in the petition and the main and subsidiary ditches as laid out by the engineer shows that the two ditch systems extend through the same territory, and, if constructed, would drain substantially the same area of land.

The first subsidiary ditch laid out in the engineer's report takes the place of the first branch of the main ditch described in the petition. Both, as described, discharge into the same coulee. Under the statement in the petition that the greater part of the waters in the branch ditch will discharge into this coulee, it is apparent that a connection with the main ditch is unimportant. The second subsidiary ditch crosses the location and takes the place of the first seven miles of the main ditch as described in the petition. It also and to some extent takes the place of the second branch ditch described in the petition. These subsidiary ditches, as planned by the engineer, thus relieve entirely the main ditch from the waters collected in and discharged through the subsidiary ditches. The evidence discloses that substantially the entire area drained by the main and subsidiary ditches specified in the engineer's report constitutes one basin, with a gradual fall towards the west, so that surface waters therein naturally flow to the west. Within this territory some sand ridges extend north and south; but through these ridges natural openings exist, permitting surface waters to pass through to the west.

The ditch petitioned for extended west seven miles beyond the line of the terminus of the engineer's ditch. From the location of other ditches in this territory it fairly appears, however, that this westerly portion of the ditch as petitioned for was designed mainly, if not entirely, to afford an adequate outlet. The engineer's plan locates the outlet in judicial ditch No. 1. The result sought by the ditches petitioned for is thus obtained at a greatly reduced cost. There is no complaint made that the change injuriously affects the territory west of the terminus of the engineer's ditch, nor is any complaint made by the owners of property subject to assessment along the lines of the subsidiary ditches specified in the engineer's report.

The land of the relator is located near the main ditch, about midway between the beginning and the outlet. The changes made in the plan of the ditch by the engineer relieve the ditch in the vicinity of relator's land from carrying the surplus waters from a considerable territory that under the engineer's plan is drained by the subsidiary ditches, thus enhancing, so far as it is affected at all, the efficiency of the ditch in the vicinity of the relator's land, and increasing the benefit to relator's land by reason thereof.

It is not made to appear that in any way the ditch, as planned by the engineer, fails to obtain the result sought to be obtained by the ditch petitioned for, or that the ditch, as planned by the engineer, does not drain this territory in a more practical and economical way than the ditch, if constructed as petitioned for, would have drained it. It appears, therefore, that the engineer proceeded strictly in accordance with the directions contained in the portions of the drainage law referred to; that is, it appears that the changes made by him in the starting points, routes, and termini of the ditch and the plan to drain the surface waters in different directions, with more than one outlet to the ditches, were made because thereby better results were obtained in carrying out the drainage project described in the petition.

It follows that the court, in establishing the ditch as so laid out by the engineer, proceeded within its acquired jurisdiction and authority.

It is suggested by counsel for the relator that unless a strict interpretation be given the drainage law, so that the engineer cannot depart materially from the course of the ditch as petitioned for, a petition for a ditch in one part of a county or judicial district may afford a basis for an engineer's plan of a ditch in a different locality, and that the costs of preliminary surveys in the abandoned locality may be placed upon the property in the vicinity of the ditch as constructed. Such result is not possible under the drainage law. The only permitted change in the course of the ditch is for the purpose of obtaining better results in draining the area which the ditch petitioned for was intended to drain.

It is further suggested that, instead of one drainage project, three independent projects are in the instant case combined. But, as stated, the area drained under the evidence constitutes one basin, in which the surplus waters mingle and are carried off to some extent through substantially the entire area by natural draws and coulees in the same general direction. Substantially the entire area might have been drained by the main ditch and branches described in the original petition. As already stated, each of the engineer's subsidiary ditches follows or crosses the line of the ditch as petitioned for. Therefore, if omitted portions of the ditch petitioned for were added to the engineer's ditch, it would unite the engineer's main and subsidiary ditches into one ditch, with branches. Surely the omission of unnecessary parts of the ditch petitioned for does not change the character of the improvement, or make it any less the single drainage project contemplated and included in the petition.

While the petition provided for in the drainage law is jurisdictional, and without it the court cannot proceed in the matter of establishing a judicial ditch, the authority of the court is not, under the law, limited to establishing the ditch described in the petition. The principal function of the petition is to institute a proceeding for the drainage of an area adjacent to the described ditch, the drainage of which, as shown by the petition, will be a public benefit and promote the general health. The appointment of a skilled engineer to lay out the ditch along a practicable route follows the filing of the petition and bond. The usefulness of the law would be seri-

ously impaired if the property owners in the vicinity of the proposed ditch were not given the benefit of the survey and expert skill of the engineer. This benefit they can only receive, if he is permitted, as the law clearly indicates he should be, to make changes in the ditch as proposed, when necessary to obtain the best results.

When the bondsmen consent to such changes, no public or private interest is jeopardized thereby. All changes in the route of the ditch are made, and notice thereof given, before the final hearing. No rights are prejudiced by the changes. All parties whose property rights may be affected by the ditch as laid out by the engineer are notified and given an opportunity to be heard before the ditch is established. Therefore no doubt arises because of a difference between the engineer's ditch and the petition ditch as to the validity of the order establishing the ditch, unless it arises because of a failure to comply with the provisions of the drainage law. No constitutional inhibition is involved.

Section 47, c. 230, p. 336, Laws 1905 [R. L. Supp. 1909, § 2651 —90], provides: "This act shall be liberally construed, so as to promote the public health, the construction and improvement of roads, and the drainage and reclamation of wet or overflowed lands." Independent of this provision, the beneficial purpose of the act being apparent, it must be fairly construed to carry out such purpose so far as possible. Protection against unwise and burdensome drainage schemes can most certainly be assured by establishing drains along the most practicable routes, as determined by a careful survey. The law contemplates that such survey may be made the basis of the drainage improvement established and constructed, by providing that "if the bondsmen for the petitioners agree thereto in writing the engineer may substantially alter the starting points, routes and termini of such ditch, drain or watercourse, or he may plan for the different parts of the ditch; drain or watercourse to flow in different directions with more than one outlet, making in fact more than one ditch," when he finds that better results can be obtained thereby.

The further objection is made that it does not appear that the county commissioners of Polk county consented to the proposed

ditch emptying into judicial ditch No. 1, and that such consent is by law required. This objection is based on section 74, c. 469, p. 583, Laws 1909 [R. L. Supp. 1909, § 2651—114]. This section has no application to a proposed judicial ditch emptying into one already constructed. The provision that no public or private ditch shall be constructed to empty into established ditches without the consent of the board of county commissioners is limited by the language of the section to ditches proposed to be constructed "by any person or persons, or any association of persons, or by any corporation, or any township, or other municipal or [sic] corporations or the authorities of either of them."

A judicial ditch does not come within the terms of this provision. There is no basis for extending the meaning of the section to include a judicial ditch. In the case of a judicial ditch, the question of the feasibility of discharging its waters into the established ditch, the necessity of enlarging such established ditch to accommodate the increased flowage, and any resulting injury, are all involved in and determined after a hearing given all interested parties. In the absence of a clear expression, it will not be inferred that the legislature intended to make the power of the district court to establish a judicial ditch, with an outlet in an existing ditch, dependent upon the consent of one or more boards of county commissioners.

We conclude that the proceedings in the matter of establishing judicial ditch No. 25 are regular and in accordance with law, and that the order of the district court establishing such ditch was made with authority and is fully sustained by the facts.

The order of the district court is affirmed.