# STATE EX REL. THEO. BOETCHER v. L. S. NELSON.[1]

## Nos. 20,311—(149).

## March 23 1917.

**Certiorari.**

1. A writ directed to a judge of a certain judicial district, naming him and specifying the district, is sufficient without being directed to the "district court" of that district.   [Reporter.]

**Bond for costs.**

2. The order for the writ required petitioner to file a bond for costs, to be approved by a justice of the court.   This was done.   *Held* a sufficient compliance with G. S. 1913, § 8315.     [Reporter.]

**Parties respondent.**

3. Service of the writ was made upon respondents and upon the attorneys of the petitioners in the ditch proceeding in question.   *Held*: It was not necessary to name all the petitioners as respondent and service on their attorney was sufficient notice to them.   [Reporter.]

**Service of copy.**

4. It is not necessary to serve a copy of the order granting the writ. [Reporter.]

## June 22, 1917.

**Drain — change of terminal points by engineer — case followed.**

5. State v. Watts, 116 Minn. 326, to the effect that a departure by the

[1]Reported in 161 N. W. 714, 163 N. W. 510.

engineer in his report in drainage proceedings from the points of commencement and terminus of the proposed ditch, when found necessary to render effective and complete the proposed drain, is not fatal to the proceeding, followed and applied.

**Certiorari — facts certified by court in lieu of record.**

6. In the absence of a full and complete record, certified on *certiorari* in review of drainage proceedings, this court will act upon the certificate of the trial court as to the facts therein stated and which are not otherwise shown by the record.

**Drain — outlet.**

7. The facts so certified by the trial court disclose an adequate and sufficient outlet for the ditch ordered constructed in the proceeding under review.

**Drain — rebuttable presumption of jurisdiction for final order.**

8. It is not necessary, in proceedings under the drainage statute, that the record affirmatively show jurisdiction in all respects. The final order therein is *prima facie* evidence of the authority to make the same, and the presumption continues until the contrary affirmatively appears.

**Drain — adjournment of hearing — when notice is requisite.**

9. The court in drainage proceedings may, under section 5531, adjourn the final hearing, for the purpose of enabling the engineer and viewers to amend and correct their reports to conform to directions of the court, where no additional lands are included in such amendments, without giving a new notice of hearing. A new notice of hearing is necessary only where additional lands are included in the amended report.

**Drain — findings of benefit sustained.**

10. Evidence *held* sufficient to sustain the findings of the court to the effect that the lands of relators would be benefited by the proposed ditch, and that public interests will be promoted by the construction of the same.

**Drain — disqualification of one viewer.**

11. Whether a member of the town board of supervisors is disqualified as a matter of law as a viewer in drainage proceedings, where the proposed ditch if constructed will necessitate the assessment of his town for benefits to highways therein, may be doubted, but it is *held* that the proceedings are not rendered invalid, even though disqualified, where the other viewers are competent to act.

**Drain — indefiniteness of final order.**

12. The final order in such proceedings should definitely describe the ditch to be constructed. A provision therein for the construction of "bulkheads * * * where necessary," is indefinite and uncertain and should be made certain by amendment.

**No error.**

13. The record presents no reversible error.

Upon the relation of Theodore Boetcher, the supreme court granted its writ of *certiorari* directed to the Honorable L. S. Nelson, as judge of the 13th judicial district of Minnesota, to review proceedings in the district court for Pipestone county to establish Judicial Ditch No. 1 in that county. Respondent's motion to dismiss the writ was denied. Affirmed.

*C. H. Christopherson,* for relator.

*Morris Evans* and *A. J. Daley,* for respondent.

The following opinion was filed on March 23, 1917:

PER CURIAM.

Respondent moves to dismiss the writ of *certiorari* heretofore issued herein upon the following among other grounds, namely: (1) That the writ was improperly directed, and fails to name the parties interested as respondents; (2) that no person indorsed the writ as surety for costs as required by section 8315, G. S. 1913, and (3) that a copy of the order allowing the writ was not served upon respondent.

The points made do not require discussion. The writ was directed to "Hon. L. S. Nelson, as judge of the 13th Judicial District of Minnesota." Counsel contends that this was fatal error, for the reason that the writ should have been directed to the "District Court of the 13th Judicial District." The contention is not sustained. The order allowing the writ directed that the petitioner file a bond for costs, to be approved by a justice of the court. The order in this respect was complied with. The bond answers every purpose of the statute. The writ was served upon respondent, and also upon the attorney for the petitioners in the ditch proceeding sought to be reviewed, and service thereof was admitted. It is not necessary that all such petitioners, in a case of this kind, be named as respondents. Service upon their attorney was sufficient notice to them. Nor was it necessary to serve a copy of the order allowing the writ.

The other points possess no greater merit than those mentioned.

The notice to dismiss is denied.

The following opinion was filed on June 22, 1917:

BROWN, C. J.

*Certiorari* to review the order of the district court of Pipestone county laying out and establishing a drainage ditch in and through that county.

The assignments of error present numerous questions, the greater part of which are unimportant and do not require special mention. They present no question of a serious nature, and will be passed with the remark that no reasons are thereby set forth justifying a reversal. The contentions upon which relators mainly rely will be considered in their order.

The facts in a general way are as follows: The petition for the ditch was in proper form and signed by the requisite number of property owners. It was duly presented to the court and a notice of hearing thereon was given as required by law. Upon such hearing an engineer and viewers were appointed, who thereafter in due season made a report of the survey of the proposed drain, and of the probable cost thereof, together with the names of persons whose land would be assessed for benefits, and other detailed matters as required by the drainage statute. The petition definitely described the proposed ditch, the place of commencement and ending, prayed for the establishment of the same with such branches, laterals and extensions as might be found necessary to effect the purposes of the drain. As petitioned for there was one main ditch with a branch designated as branch A; the total length of which was about 11 miles. The report of the engineer followed in a general way the route proposed by the petition, commencing the main ditch substantially at the point designated by the petition and ending at the point named therein. Branch A was extended a distance of about 7 miles, but aside from that extension conformed, with some unimportant variations, substantially with the description given in the petition. The reason for the extension of branch A was that the project would, in the opinion of the engineer, result in a failure unless the territory adjacent to the extension was included therein. In other words, the survey was made to embrace all land within the particular drainage basin, on the theory that, if not so extended, the lands not

within the project as petitioned for would cast their surplus waters down upon the drained land, and thus render the whole proceeding useless and of no benefit at all. The engineer made other recommendations as to laterals, branches and side ditches, which in his judgment were necessary to render the drain a complete success, and, presented with his report the necessary plats and specifications as required by section 5527, G. S. 1913. Upon the coming in of the report the usual notice of final hearing was given, and July 25, 1916, fixed as the date thereof. This notice in all respects conformed to the requirements of the statutes, and contained all the information necessary to acquaint property owners with the nature and scope of the proposed drain, as amended and supplemented by the report of the engineer. A large number of property owners appeared by attorney at the final hearing and interposed various objections to the proceedings and the validity thereof, all of which were overruled by the court. After disposing of these objections and other preliminary matters, including certain objections to the report of the engineer, the court ordered an adjournment of the hearing until September 12, 1916, at the same time directing the engineer to submit an amended report for consideration at the adjourned hearing, and to file the same on or before August 25, 1916. The court was authorized to require an amended report from the engineer by section 5531, G. S. 1913. The additional or amended report was made, but, as we understand the record, did not include any new land for assessment, and did not involve the rights of any landowner not included in the original report. At the adjourned date relators appeared by their attorney and objected to further proceedings, on the ground that the court was without jurisdiction, since no new notice of hearing was given as provided for by the last paragraph of section 5531. The objection was overruled, and after disposing of certain matters the court again adjourned the hearing until October 10, at which time all parties again appeared, the court heard the evidence presented by them, and upon due consideration thereof, and after a personal inspection of the proposed ditch, made the final order establishing the same, of which relators complain.

1. The first point made by relators is that the whole proceeding was rendered invalid by the act of the engineer in extending the starting

point of branch A of the ditch a distance of 7 miles from that petitioned for, and adding other branches and side ditches by which the total mileage of the ditch was increased some 50 or 60 miles; this increase being not in continuous length of the ditch, but in the aggregate length of the main ditch and the various branches thereof, as designated by the report. We do not sustain this point.

The case cannot in point of its substantial facts be distinguished from the case of State v. Watts, 116 Minn. 326, 133 N. W. 971. In that case there was a departure of about 7 miles from the point of commencement of the proposed ditch as stated in the petition, and a like departure from the point of terminus, and both were made by the engineer on the ground that they were necessary to a complete drainage project. In the case at bar there was an extension of the branch A a distance of about 7 miles, and this was recommended by the engineer for the same reasons as were acted upon in the Watts case. All other lateral or branch ditches in this case were those called for by the petition, as "such other branches, laterals and spurs as in the opinion of the engineer * * * may be necessary to give owners of lands likely to be assessed herein the full benefit of the drain and drainage herein mentioned," and not therefore a departure from the petition, but a compliance therewith. The facts in the two cases being substantially the same we follow the rule applied in the Watts case. See also State v. District Court of Norman County, 131 Minn. 43, 154 N. W. 617; Rooney v. County of Stearns, 130 Minn. 176, 153 N. W. 858. The act of the engineer in extending the ditch as stated was authorized by statute, and was for the sole purpose of effecting a better drainage system than could be obtained by following the petition. And, as stated, if better results could thereby be obtained, the extension was within his authority.

2. It is also contended that no outlet for the ditch is provided for, and for this reason that the proceedings must fail. If the contention that there is no adequate outlet for the water collected in the ditches were true, the whole proceeding would be an absurdity, the drain ineffectual for any purpose, and the proceeding without authority and void. But the record does not sustain the claim that there is no proper outlet. It is true that the ditch terminates at the Pipestone Indian Reservation, a

body of lands owned by the Federal government and set apart for Indian purposes. But it appears from the certificate of the trial court, attached to the return herein, that the Federal government has cooperated in the proposed drainage project by the appropriation of money to carry the drain across the reservation, so that the waters collected therein may be discharged in an outlet beyond. Just what was shown to the court below upon this matter does not appear from the record, which the trial court certifies is incomplete, the occasion thereof being that the proceedings in some respects were informal, and the reporter did not make a full record thereof. No application for a settled case was made. In this state of the record we act upon the statement of the court in respect to the drain across the reservation, for the record contains nothing to support the contention of relator to the contrary. State v. Graffmuller, 26 Minn. 6, 46 N. W. 445. It is not necessary in proceedings of this kind that the record affirmatively show jurisdiction in respect to every feature of the proceeding. The final order is presumptive evidence of the validity of each step taken, and the presumption continues until the contrary is shown, or clearly appears from the record as made and certified to this court. G. S. 1913, § 5574; Geib v. County of Morrison, 119 Minn. 261, 138 N. W. 24.

3. The contention that the court had no jurisdiction to hear and determine the proceeding at the adjourned hearing on September 12, since no new notice was given as provided for by the last paragraph of section 5531, involves a construction of that together with the preceding provisions of that section of the drainage law. The section has reference to the final hearing and to proceedings thereon. Authority is therein given to the board of county commissioners, or the judge of the district court, as the case may be, on the final hearing, to order and require amendments and corrections to the report of the engineer and the assessments of the viewers, or to resubmit the whole matter to them for further consideration and report. If amendments are ordered the statute provides that the engineer or viewers "shall forthwith proceed to reconsider such matters, and, at such final hearing or at such time thereafter as shall be fixed and determined" by the court, report the corrections and amendments in writing. By the paragraph

preceding the one in which this provision is found an adjournment of the hearing is expressly provided for. The last paragraph of the section provides for a resubmission of the whole project to the engineer and viewers, for a new report by them, and that upon the presentation thereof, required to be made within 30 days, a new hearing be had upon notice as required for the original final hearing. Provision is also made in the preceding paragraph, to the effect that, when an amended report shall contain land not included in the original report, it shall not be assessed for benefits until a new notice of hearing has been given. Other provisions of the statute relating to this feature of the proceeding need not be specially referred to.

We conclude from the section, taken in its entirety, that the legislature contemplated that an adjournment of the final hearing might become necessary in particular cases, either to enable the engineer to amend and correct his report, or for a correction of the report of the viewers, or for some other proper purpose, and provision was made therefor. Where an adjournment is taken for the purposes stated, or for the convenience of the court, or county board, there is presented no occasion for the service upon interested parties of a notice of the adjournment other than that given at the time. The occasion for a new notice arises only when the amendments or corrections made by the engineer or viewers, under direction of the court or county board, include lands to be assessed for the drain or which may be damaged thereby which were not included in the original report. In such event a new notice of hearing is necessary. But the statute should not be construed as requiring a new notice where no additional lands are embraced within the amendments made. In the case at bar no additional lands were brought into the proceeding and the statute, properly construed, authorizes an adjournment in such a case without the publication of a notice of hearing.

4. The contention that the lands owned by relators, and those associated with them in opposition to the proceedings, are adequately and sufficiently drained, and that therefore this proposed drain casts upon them an unnecessary burden by way of assessments for alleged benefits, cannot be considered because of the incomplete record; the evidence is not all returned, and no effort was made to have a case settled in which

all the evidence would appear. But aside from that, and conceding that the evidence found in the uncertified reporter's transcript embodies all the material evidence upon this branch of the case, we find no sufficient reason for disturbing the decision of the trial court thereon. The question of the necessity and propriety of proceedings of this character, including the necessity and propriety of draining particular tracts of lands, is one that is addressed to the judgment and discretion of the tribunal having jurisdiction of the matter, whose conclusions will be disturbed by the courts only when the evidence, taken as a whole, furnishes no legal basis for the decision of such tribunal. State v. City of Duluth, 125 Minn. 425, 147 N. W. 820. The evidence in this case will not warrant that conclusion, and we sustain the conclusion of the trial court upon the issue of the necessity of draining relator's land, as well as the conclusion that public interests will be benefited by the improvement.

5. Relators contend that the court erred in not sustaining their objection to one of the viewers appointed by the court. The particular viewer so objected to was a member of the board of supervisors of the town of Gray, through which the ditch in part extends, which town was liable for and in fact was assessed for benefits to the highways therein. The contention is that the official position of the viewer disqualified him as a matter of law. Whether the contention is sound, we do not at this time determine. It is unnecessary to the decision of the case. Section 5528 of the drainage statute provides that the viewers appointed in proceedings thereunder shall be resident freeholders of the county, not interested in the construction of the proposed work, and not of kin to any person known to be interested therein. The purpose of this statute was to secure impartial viewers, those entirely free from conscious or unconscious bias or prejudice. It is doubtful whether it should be construed to disqualify, as a matter of law, a town officer of a town which might be assessed for benefits to its highways. His official position would give him no personal interest in the proceeding, and his sole connection with the matter would be as a public official, which of itself alone would furnish no basis for the claim of either express or implied bias. But whatever may be the proper answer to the question, we think the refusal of the court to sustain relator's objection, if error at all, by force of the clause of section 5572, to the effect that "a ma-

137 M—18

jority of the viewers shall be competent to perform the duties required of them" was rendered entirely without prejudice, for there is no claim that the other viewers were incompetent or disqualified. It appears, therefore, that a majority thereof were competent to act.

6. It is further contended that the ditch is not by the final order located with sufficient certainty and definiteness. The order of the court is to be construed in connection with the report and the amended report of the engineer and viewers, and the survey and plat of the ditch as prepared by the engineer and filed as a part of the record in the proceeding. We have examined these documents, and though to the lay mind perhaps somewhat confusing and in a measure indefinite, we are clear that therefrom a competent surveyor could definitely locate the ditch upon the ground, and this answers the purpose of the law. Slingerland v. Conn, 113 Minn. 214, 129 N. W. 376. The final order is, however, in one respect so indefinite as to require a modification. The order requires that "concrete bulkheads be constructed for the above branches where they are necessary." Just where or how many bulkheads must be erected by the contractor in the construction of the ditch is thus left to doubt and uncertainty, inviting future controversies and perhaps litigation upon the possible issue as to the necessity of bulkheads at particular points. It is probable that the court intended the matter to be definitely covered by the contract. But we think the final order should specify the number and location of the bulkheads for the protection of bidders if for no other purpose. And when the cause is returned the court will, upon notice to the parties, ascertain the facts and amend the order in this respect, stating definitely the number and location of the required bulkheads.

7. This disposes of the case and of all the points requiring special mention. Some irregularities are disclosed by the record, but not of a jurisdictional nature, or of a character to invalidate the proceeding. The question whether the petitioners in such proceedings shall in any case be required to file an additional bond rests in the sound judgment of the court, or the county board, depending upon which has charge of the proceeding. That the engineer failed to submit a form of contract with his report was a minor irregularity, and the appointment of a referee, even though prematurely made by the court, is a matter of

which relators cannot complain. Their substantial rights were in no way affected thereby. Whatever changes the court ordered made in the report of the engineer were authorized by section 5531.

Order affirmed.