IN RE PETITION OF E. A. GIBBS AND OTHERS FOR THE
ESTABLISHMENT AND CONSTRUCTION OF A PUBLIC
DITCH AND DRAIN IN THE COUNTY OF
WATONWAN, MINNESOTA, KNOWN AS
JUDICIAL DITCH NO. 35.

STATE EX REL. LOUIS MOVITZ AND OTHERS v. THE
DISTRICT COURT OF WATONWAN COUNTY.[1]

June 16, 1922.

Nos. 22,393, 22,370, 22,371.

Preliminary survey of proposed ditch by engineer to ascertain, if possible,
a feasible plan.

1. The drainage law, embodied in G. S. 1913, § 5523, et seq., as
amended by Laws 1917, c. 441, provides for the appointment of an
engineer upon the filing of the petition and bond. He make a prelim-
inary survey, and reports upon the necessity and practicability of the
plan outlined in the petition. He may modify or change the plan and
report accordingly. The petition need not describe definitely the pro-
posed ditch. It is intended that the engineer by his preliminary sur-
vey shall determine with some degree of accuracy a feasible plan, if
there is one; and if the court finds that the required conditions exist
it orders the engineer to prepare an accurate and detailed survey and
to furnish plans and specifications and to report.

Preliminary survey and order directing detailed survey sufficient.

2. The preliminary survey and report of the engineer, though in-
definite as to specific findings, are sufficient; and the order of the
court adopting them and directing a correct and detailed survey and
the furnishing of plans and specifications is sufficient and valid.

Addition of branch ditch proper under amended law of 1917 (chapter 441).

3. The amendment of 1917 does not intend that an addition may not
be made, in the detailed survey and final report, to the plan outlined
in the original survey, though under the amendment, properly ad-
ministered, there should be little occasion for radical additions; and
the survey and report of the engineer under G. S. 1913, § 5531, adding

[1] Reported in 188 N. W. 1015.

a branch ditch not included in the preliminary survey to drain more effectively the drainage system, were proper.

**Assessments on private tiling system not determinable on certiorari.**

4. A branch extended to a private tiling system of the relators, connected with it, furnished it an outlet, and it was adopted as a part of the drainage system. The land which the private tiling system served was a part of the drainage basin involved in the drainage proceeding. The relators were not deprived of their property without due process or of other constitutional right by this procedure. The validity of assessments of benefits to lands affected by the private tiling system is not determinable on certiorari.

Upon the relation of Louis Movitz and others the supreme court granted its writ of certiorari directed to the district court for Watonwan county and the Honorable W. L. Comstock, judge thereof, to review proceedings in that court establishing Judicial Ditch No. 35. Affirmed.

*J. W. Seager* and *Allen, Seifert & Allen,* for relators.
*Edward C. Farmer,* for respondent.

DIBELL, J.

Three writs of certiorari were issued by this court on behalf of different relators to review proceedings in Judicial Ditch No. 35 in Watonwan county. On December 19, 1919, a petition and bond were filed. Lands in township 105, range 31, were affected. On May 26, 1920, the court made an order adopting and confirming the preliminary report of the engineer and directing him to make a detailed survey and report. On February 3, 1921, it made an order approving the final report of the engineer and of the viewers, confirming the assessments, and directing the establishment and construction of the ditch. These orders are the ones under review.

1. The drainage law, as embodied in G. S. 1913, § 5523, et seq., was amended by Laws 1917, p. 692, c. 441, in some particulars, and left unchanged in others.

Section 5526, as amended, provides that upon the filing of the petition and bond the court shall ex parte appoint an engineer and direct him to make a preliminary survey and report upon the "prac-

ticability, necessity and advisability" of the proposed ditch; and he may report a different plan. He is to report upon the "feasibility of the proposed plan either as outlined in said petition or according to some other or different plan that may be designated or recommended." He is required to "designate all changes whether by extension, adding main laterals or otherwise that may be necessary to make the plan of the proposed improvement practicable and feasible;" and he must examine the nature and capacity of the outlet. If he finds the proposed improvement feasible he includes in his report a map, giving the description of the lands affected and the names of the owners.

Upon the filing of this report notice is given, and a "full hearing" is had. If it appears that the proposed improvement is not practicable, and the engineer reports no plan whereby it may be made practicable, or if it appears that it is not of public benefit or utility, or that the outlet is not sufficient, the petition is dismissed. If the court is satisfied that the improvement as outlined in the petition or as modified and recommended by the engineer is practicable, that it is necessary, that it will be a public benefit and promote the public health, and that it has a sufficient outlet, it so finds, and orders the changes, if any, that shall be made in the improvement outlined in the original petition. The court then orders the engineer to make a detailed survey and furnish plans and specifications, and report to the court. The engineer then proceeds with his work and reports as is provided in sections 5526 and 5527, as amended. Sections 5528 and 5529, which are unamended, provide for the appointment of viewers, and for the assessment of benefits. Section 5530, as amended, provides for the report of the viewers. Sections 5531 and 5532, unamended, provide for a final hearing of the report, on notice, and for the establishment of the ditch.

An important purpose of the amendment is to give an early hearing upon a preliminary survey and report, before great expense has been incurred, instead of leaving everything to the hearing upon the viewers' report, after much expense; and to give an opportunity to determine early in the proceeding what the improvement shall be, and to permit changes in the original project or additions thereto,

as to which interested parties will have a hearing, instead of leaving it, as formerly, to the hearing on the final report, where the validity of changes or deviations or additions was a cause of embarrassment to counsel and courts, and of very considerable uncertainty in the final judicial decision. The statute appreciates that the petitioners cannot, without a survey, be accurate in describing a practicable ditching project. It permits the petition to be general, and intends that the preliminary survey will go far towards determining the practicable ditch improvement.

2. The court appointed an engineer to make a preliminary survey. He omitted four sections described in the petition and included six sections not described therein. The plan which he reported differed from that described in the petition. On May 26, 1920, upon a hearing on notice, the court adopted the report, and directed the engineer to make a detailed survey and furnish plans and specifications and make his report.

The petition was general. What the petitioners wanted was an effective ditch. They did not know, and no one could know, in advance of a survey, just what lands were within the watershed and should be drained, nor the most practicable course of the ditch, nor the most effective method of construction. The amended statute appreciates this condition and provides for it. A general description of the improvement is permitted, the petitioners give a bond for costs, and a preliminary survey is had. The engineer investigates, and may add or omit lands, as he did in this case, and report the practicable system of ditching, and the appropriate method of construction.

The engineer's preliminary report was not nearly so exact as it might have been. He did report, however, that he had examined into the "practicability, necessity and advisability of the construction" of the ditch, that there was a suitable outlet, and recommended changes and additions as referred to in a plat attached. A hearing was had upon notice. The court adopted and confirmed the survey and report, and directed the making of a correct and detailed survey of the furnishing of plans and specifications. Neither the report nor the order contained specific findings of the facts justifying the

adoption of the report or the direction of a detailed survey. The statute provides that the changes may be described in general terms, and shall be sufficiently described by attaching a map to the order and petition. A map was attached to the report of the engineer and the report was adopted by the court in its order. While the report and order are not so definite and complete as they should be they are held sufficient.

3. In his detailed survey and final report the engineer added branch 24, commencing on the east quarter corner of section 17, passing through 16 and 9, and out-letting in 10. Owners of four forties in 16 and two forties in 17 objected at the final hearing and are relators here.

It was one purpose of the 1917 amendment to have the course of the ditch and the lands included in it determined before a final survey. It was not its purpose absolutely to prevent the construction of branches or laterals where it was found upon a final survey that they were proper and reasonably necessary to the completeness of the ditch project. The addition here was not great, and is not shown to be impracticable, and it is valid. Much greater variations have been allowed under section 5531. State v. Watts, 116 Minn. 326, 133 N. W. 971; Rooney v. County of Stearns, 130 Minn. 176, 153 N. W. 858; State v. Nelson, 137 Minn. 265, 161 N. W. 714, 163 N. W. 510; In re Judicial Ditch No. 12, Renville County, 147 Minn. 290, 180 N. N. 119. Under the 1917 act, properly administered, there need be no such variations as were tolerated before, and little occasion for radical changes. They can be reduced to a minimum. That here made is upheld.

4. Branch 8 extended to a private tiling system of two of the relators, connected with it, furnished it an outlet, and adopted it as a part of the drainage system.

There is no constitutional objection to adopting a private drain as a part of a public drainage system. The lands served by the private drain were in the drainage basin. So far as appears they were properly included in the drainage project. The order establishing the ditch determines that they were, and we sustain it. That relators had established private drainage did not prevent public drain-

age including their private system.   Were it otherwise private drainage systems might limit or prevent the efficient public drainage of a basin partially drained by a private system.   Private property may be taken or damaged in a drainage proceeding.   In a proper sense a drainage project always takes or affects private property.   It restricts the owner's rights in his property.   The owner's land cannot be taken or damaged without compensation.   When taken or damaged the rights of the owner are protected in the assessment of benefits and damages.   This is not the proper place to discuss how the rights of one whose private drainage system is taken by a public drainage proceeding are to be worked out.   We note without comment Drainage Dist. v. Chicago, B. & Q. R. Co. 96 Neb. 1, 146 N. W. 1055, involving the taking of a private ditch.   A somewhat analogous principle, approached from a different angle, is involved in Cohen v. St. Louis N. Co. 34 Kan. 158, 8 Pac. 138, 55 Am. Rep. 242, where there was on the property condemned a railroad grade valuable to the condemning company.   There, of course, damages, not benefits, were involved.   In the case before us the relators interested in the private drain have something of value.   In the ditch proceeding something more of value may be added.   Their property may be benefited though their ditch is appropriated.   By G. S. 1913, § 5528, it is sought to take care of a somewhat similar situation. Whether the statute properly guards the rights of those interested is not for consideration now.   It has been suggested that under G. S. 1913, § 5533, there must be a separate award of damages.   Cunningham v. County of Big Stone, 122 Minn. 392, 142 N. W. 802.   The amount awarded for benefits or damages is not reviewable on certiorari.   Appeal lies.

Orders affirmed.