IN RE IMPROVEMENT AND REPAIR OF JUDICIAL DITCH NO. 10 IN COUNTIES OF KITTSON AND MARSHALL.[1]

June 10, 1927.

No. 26,106.

**Enlargement of capacity and outlet of existing judicial ditch authorized by 1925 act.**

1. The so-called repair provisions of the drainage act of 1925, c. 415, Laws of that year, authorize the improvement of an existing drainage system by enlarging its capacity and constructing a better outlet. It differs from prior acts in that it makes ample provision for notice and hearing in such cases.

**Directing construction of new and better outlet was authorized by that statute.**

2. The statute authorized the court to make such changes in the improvement petitioned for as were necessary to provide efficient drainage for all lands assessable for its construction, and directing the construction of a new and better outlet was within the power conferred.

Drains, 19 C. J. p. 700 n. 72.

[1]Reported in 214 N. W. 285.

Certiorari upon the petition of Ella Erickson, relator, to review an order of the district court for Kittson county, Grindeland, J., allowing the repair and improvement of a judicial ditch. Affirmed.

*Julius J. Olson* and *Rasmus Hage*, for relator.

*A. N. Eckstrom* and *R. V. Blethen*, for respondent.

TAYLOR, C.

This is a proceeding to repair and improve judicial ditch No. 10 of Kittson county, and is brought under L. 1925, p. 585, c. 415. This act revised, amended and extended our drainage laws and repealed prior drainage laws except as continued therein. After extended hearings, the trial court made an order directing the making of extensive repairs and improvements including the construction of a new and better outlet about four miles in length. A writ of certiorari brings the proceedings before this court for review. The relator contends that in directing the construction of the new outlet the trial court exceeded the authority conferred upon it by the so-called repair provisions of the statute.

A brief description of the territory affected and of the drainage system may aid in understanding the situation. The line between the counties of Kittson and Marshall is the south line of the towns of Davis, Svea and Teien in the county of Kittson. Each of these towns comprises a government township. The town of Davis is township 159 of range 48; the town of Svea adjoins Davis on the west; and the town of Teien adjoins Svea on the west. Many years ago judicial ditch No. 3 was established and constructed. It begins at the southeast corner of section 35 in the town of Davis and runs west 11 miles on the county line to the southeast corner of the town of Teien and then runs north on the line between that town and the town of Svea about four miles to a coulee through which it discharges into the Red river. Some years later judicial ditch No. 10 was established and constructed. This ditch begins a short distance east of the quarter section corner on the east side of section 35 in the town of Davis and one-half mile north of the beginning of ditch No. 3. It runs west two and a half miles on the quarter section

line, then north one half mile to the section line, then west on the section line eight and a half miles to the line between the towns Svea and Teien, where it intersects ditch No. 3, then south along ditch No. 3 one mile to the county line, and then west on the county line four and a half miles and discharges into the Red river. The Great Northern railway extends in a northerly and southerly direction across the west tier of sections in the town of Davis. That part of ditch No. 3 extending from the railway to the southeast corner of the town of Teien, about seven miles in length, was included in ditch No. 10 as branch B. Ditch No. 3 discharged into the Red river near the northeast corner of the town of Teien; ditch No. 10 near the southwest corner of that town. When the water brought down by ditch No. 10 reaches ditch No. 3, however, it divides, except in times of low water, part going north to the outlet of ditch No. 3 and part going south and west to the outlet of ditch No. 10. Across the town of Davis and the eastern half of the town of Svea there is sufficient fall to carry the water down the ditches; but the land in the southwestern part of the town of Svea and southeastern part of the town of Teien is nearly a dead level, and at certain seasons of the year water brought down the ditches from the east overflows a considerable area in this locality. To remedy this condition is the purpose of the improvement in question.

[1] Sediment varying from one to three feet in depth had been deposited in the bottom of the ditch, and weeds, grass and willows have grown up which obstruct the flow of the water. The improvement includes removing this sediment and these obstructions. That the court had jurisdiction to direct the making of this part of the improvement is not disputed. The improvement also includes providing a new outlet for ditch No. 10 by constructing a ditch beginning in ditch No. 10 at the southeast corner of section 29 in the town of Svea and running in a northwesterly direction about four miles to the coulee in the northeastern corner of the town of Teien through which ditch No. 3 discharges. It is conceded that the proposed outlet follows the course of the coulees and depressions in that locality and will carry the water along the course in which it would naturally flow. Also that the fall along this extension is sufficient

to carry the water brought down from the east through to the river. The relator admits that this extension will furnish the best and most efficient outlet for the ditch, but contends that the statute authorizing repairs and extensions under which the proceeding is brought does not give the court power to direct the construction of such a new ditch.

None of those assessed for the improvement are opposing it. The relator is the owner of land across which the new outlet is to be constructed. She is not assessed for benefits, but is awarded damages. The new ditch as proposed does not drain any new or additional territory, but merely provides a better outlet for the original ditch, and hence does not transgress the rule which limits changes and extensions to such as are necessary to afford complete drainage to the lands assessable for the construction of the ditch petitioned for. In re Judicial Ditch No. 9, 167 Minn. 10, 208 N. W. 417, and cases there cited.

The relator cites the line of cases beginning with State v. McGuire, 109 Minn. 88, 122 N. W. 1120, holding that an improvement which would create an essentially new ditch cannot be constructed under the statutory provisions authorizing the making of repairs. Those decisions were based on the fact that the statute relating to repairs, then in force, made no provision for notice or hearing, and that a ditch could not be substantially enlarged or extended without affording the parties affected thereby an opportunity to be heard. The act of 1925 under which the present proceeding is brought plainly intends to confer the jurisdiction lacking under the prior act, for it provides that where the improvement needed consists in enlarging or extending the original system the same notice shall be given and the same proceedings be had as in the case of establishing an original ditch. The present act having made ample provision for giving all parties affected their day in court, the cases cited are not in point. That the notices were duly given, that the hearings were duly held, and that the proceedings were regular in all respects is conceded.

[2] It is urged that neither the petition for the improvement nor the statute authorizes the construction of the outlet in question. The statute provides that upon the filing of a petition setting forth

that the drainage system, "needs deepening, widening or extending so as to furnish sufficient capacity or better outlet," the court, in the case of a ditch affecting two or more counties, shall appoint an engineer who shall examine the drainage system and report his recommendations; and also provides that if the court shall find from such report and the evidence presented in support of it "that the improvement needed consists in deepening, widening or extending the original system," the court shall appoint viewers and that the subsequent proceedings shall be the same and be conducted in the same manner as in the case of a proceeding to establish an original ditch. The power given to extend the system so as to furnish a better outlet is sufficient, we think, to authorize the court to direct the construction of the outlet proposed.

It is conceded that the petition was signed by a sufficient number of landowners to initiate a proceeding to repair and improve an existing drainage system, but not by a sufficient number of land-owners to initiate a proceeding to establish and construct a new drainage system. As the purpose of this proceeding is to improve an existing drainage system, the petition is sufficient. The point is made, but is not very seriously urged, that the petition does not ask for a new outlet and that the outlet in question cannot be constructed under it for that reason. The petition states that "said ditch and particularly that part known as 'Lateral B' is of insufficient capacity and needs deepening and widening to provide sufficient capacity and a better outlet." It is true that the petition does not specifically ask for the construction of a new outlet, but it does ask that an engineer be appointed to ascertain and report on the necessity of the repairs asked for and that such further proceedings be had as may be necessary for the proper repair of the ditch.

Except as to the number of petitioners required, the proceedings for improving an existing drainage system by enlarging its capacity and providing a better outlet are substantially the same under the present law as the proceedings for establishing and constructing a new drainage system; and the authority to make changes in the plan of the improvement petitioned for is substantially the same in the one case as in the other. The provisions of the former statute

authorizing the making of such changes in the drainage system described in the petition as may be found necessary to accomplish the purpose of the petition have been continued, at least in substance, in the present statute. And it is settled that under these provisions the court has power to make such changes in the system as may be necessary to provide efficient drainage for all lands assessable for the construction of the improvement petitioned for. State ex rel. Pederson v. Watts, 116 Minn. 326, 133 N. W. 971; State ex rel. Bjorem v. District Court, 131 Minn. 43, 154 N. W. 617; State ex rel. Boetcher v. Nelson, 137 Minn. 265, 161 N. W. 714, 163 N. W. 510; In re Judicial Ditch No. 12, 147 Minn. 290, 180 N. W. 119; In re Judicial Ditch No. 35, 152 Minn. 352, 188 N. W. 1015; In re Judicial Ditch No. 9, 167 Minn. 10, 208 N. W. 417.

We think the action of the court in directing the construction of the outlet in question was within the authority conferred by the statute, to make the changes necessary to enable the improvement to accomplish the purpose intended.

The order is affirmed.