In the Matter of the Petition of W.F. SCHWARZE and Others for the Improvement of McLeod County Ditch No. 5 and for the Assignment of an Outlet Charge and Redetermination of Benefits to McLeod County Ditches No. 13, 29 and Private Ditches Draining into Ditch No. 5.

No. C4–87–1708.

Court of Appeals of Minnesota.

Jan. 12, 1988.

Harald F. Hendricksen, Smith & Hendricksen, Glencoe, for appellant Schwarze.

Michael Junge, McLeod Co. Atty., Glencoe, for respondent McLeod County.

Heard, considered and decided by FOLEY, P.J., and SCHUMACHER and STONE \*, JJ.

## OPINION

BRUCE C. STONE, Judge.

This appeal is brought from an order of the McLeod County District Court affirming the decision of the McLeod County Board of Commissioners not to establish a ditch improvement project. Appellants assert the trial court erred in interpreting a stipulation between the parties and in not ordering the county to establish the project. We affirm.

## FACTS

On September 1, 1980, a petition for improvement and extension of McLeod County Ditch No. 5 was filed with the County. After preliminary hearings, the County Board ordered a detailed survey and plans and specifications for the project. On January 24, 1984, following a final hearing, the Board concluded that all of the statutory criteria had been met and ordered the establishment of the project.

---

\* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The January 24, 1984 order was appealed to the district court by 132 landowners who objected to the amounts of the outlet charges assessed against their property. Outlet charges are a method of assessing the costs of a project against the owners of land benefitted by the project. *See generally* Hanson, *Damming Agricultural Drainage: The Effect of Wetland Preservation and Federal Regulation on Agricultural Drainage in Minnesota,* 13 Wm. Mitchell L.Rev. 135 (1987). The appeal was resolved by stipulation. The Board approved the stipulation on January 7, 1986. The stipulation provided in relevant part:

12. *Revised Project Documents*

The parties have caused to be prepared, and hereby approve, revised project documents as follows:

a. *Revised Summary of Total Estimated Project Cost*

A revised cost estimate dated December 11, 1985, * * * attached as Exhibit 1, is hereby approved by the parties as an accurate and appropriate estimate of total project costs * * *. *The costs set forth on Exhibit 1, except the items titled "construction cost" and "fiscal and financial," are caps on maximum allowable costs and shall not be exceeded.*

\*    \*    \*    \*    \*    \*

13. *Payment of Total Cost*

The total cost shall consist of the actual expenditure for those items set forth on Exhibit 1, subject to any allowable increases as provided for in Part II, paragraph 12 above. The parties shall request the County Board to assess the total cost as set forth below:

a. *Ditch 13*—The outlet charge to lands in County Ditch 13 shall equal twenty-three percent (23%) of the total cost, to be assessed equally to all acres in the watershed of Ditch 13, with each acre assessed an equal share of the total outlet charge for Ditch 13.

b. *Ditch 29*—The outlet charge to the lands in County Ditch 29 shall be five percent (5%) of total cost, to be assessed equally to all acres in the watershed of Ditch 29, with each acre assessed an equal share of the total outlet charge for Ditch 29.

c. *Ditch 5*—Seventy-two percent (72%) of the total cost shall be assessed to lands in County Ditch 5, in proportion to the benefits determined, and in accordance with the distance of each 40 acre parcel from the ditch.

(Emphasis added).

The outlet charges listed on Exhibit 1 were $139,100 for Ditch 13 and $30,200 for Ditch 29. These outlet charges had been $200,000 for Ditch 13 and $50,000 for Ditch 29.

Following the Board's approval of the stipulation, proceedings were deferred pending approval of the Corps of Engineers. On January 30, 1987, the Corps notified the Board that the project was not within Corps jurisdiction.

The Board held a hearing on April 28, 1987 to accept bids. Following this hearing, the Board concluded that the costs of the project would exceed the benefits and resolved that the project would not be established.

The April 28, 1987 order was appealed to the district court. The court, after disallowing several items of cost, concluded that the benefits were $509,082.07 and the costs were $508,227.34. The court did not order the project established, as it would normally be required to do. Instead, the court remanded the matter to the Board for two reasons: first, benefits exceeded costs by only .16% ($854.73), and second, the court was concerned that some of the bids had expired. The court further concluded that the outlet charges for county ditches 13 and 29, as listed in the stipulation, were "capped" costs which could not be exceeded. This order was filed June 10, 1987.

The County Board held a hearing on June 23, 1987. At that hearing, the Board reduced the outlet charges for county ditches 13 and 29 from $139,100 and $30,-

200, respectively, to $133,440 and $28,970, respectively. These charges were lowered to reflect a drop in construction costs. The Board added interest charges of $1,946.93 and then concluded that the costs of the project ($518,077.67) exceeded the benefits ($509,082.07) and ordered the project not be established.

The Board's action was appealed to the district court, which affirmed on August 14, 1987. This appeal followed. On appeal, appellant contends the trial court erred in deciding that the outlet charges for county ditches 13 and 29 were part of the total cost of the project, and subject to the "cap" imposed by the stipulation. In addition, appellants contend the trial court erred in not ordering the project established.

## ISSUES

1. Did the trial court err in its interpretation of the stipulation between the parties?

2. Did the trial court err in not ordering the project established?

## ANALYSIS

■ 1. An appeal of an order of the county establishing or refusing to establish a drainage ditch is governed by Minn.Stat. § 106A.095 (1986). On appeal to the district court,

The appeal must be tried by the court without a jury. The court shall examine the entire drainage proceeding and related matters and receive evidence to determine whether the findings made by the board can be sustained. At the trial the findings made by the board are prima facie evidence of the matters stated in the findings, and the board's order is prima facie reasonable. If the court finds that the order appealed is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed is arbitrary, unlawful, or not supported by the evidence, it shall make an order, justified by the court record, to take the place of the appealed order, or remand the order to the board for further proceedings. After the appeal has been determined by the court, the board shall proceed in conformity with the court order.

Minn.Stat. § 106A.095, subd. 2.

The conclusions of the McLeod County Board "will be disturbed by the courts only when the evidence, taken as a whole, furnishes no legal basis for the decision of the [Board]." *In re Petition of Black*, 283 Minn. 86, 88, 167 N.W.2d 147, 149 (1969) (quoting *State ex rel. Boetcher v. Nelson*, 137 Minn. 265, 273, 163 N.W. 510, 513 (1917)). "[A] substantial amount of discretion must of necessity remain with the county board * * *." *In re County Ditch #13, Jackson County*, 289 Minn. 108, 110, 182 N.W.2d 715, 716 (1971).

In the present case, McLeod County had been involved in litigation over the proposed ditch in 1984. An appeal was brought in district court by landowners who objected to the amounts of the outlet charges assessed against them. As a result of that appeal, the parties entered into a stipulation regarding costs and benefits.

There are two possible interpretations of the language of the stipulation. The first is that McLeod County agreed to place a cap on the outlet charges to settle the litigation over the ditch. This was the interpretation urged on the Board by counsel for the 132 objectors and was adopted by the Board.

The second alternative would be that the stipulation covers only the method by which outlet charges are assessed, and is the alternative urged by the appellants. In that version, a percentage was assigned to each ditch involved and was not a cap on the total.

In the present case, McLeod County had been involved in this proceeding since 1980. The decision to establish the project was appealed to the district court by landowners who objected to the outlet charges assessed against their land. To settle the

case, the county and the landowners agreed to limit these charges. The interpretation of the stipulation of settlement urged on us by appellants—that it covered only the method of assessment of outlet charges—would run contrary to the purpose of the settlement.

At the final hearing, counsel for the objectors testified:

> And as you will recall in that paragraph on page 8 these were to be caps on costs with the exception of construction and fiscal and financial. Everything else was a cap. And the understanding of the appellants and, I believe, the petitioners was they were absolute caps with those two exceptions.
>
> \*   \*   \*   \*   \*   \*
>
> So if we take those two numbers—the only two things that were allowed to change were fiscal and financial in the construction and the—when you use those two numbers the actual cost of— should be reduced about 2 or 3, $4,000, something like that. Since those were the only two things that were allowed to change and since they have actually been reduced, when you look at Exhibit 1, the 23 percent to Ditch Number 13 should be that 139,100 or slightly less than that. Same with the 5 percent. *Because nothing else on this sheet was supposed to change except for those caps and that's why we had definite caps. We wanted to know that the only thing that could up that 139,100 was construction costs or fiscal and financial.*
>
> \*   \*   \*   \*   \*   \*
>
> Going back to this sheet, it's the appellant's position and my position that if the construction costs and the fiscal and financial are actually lower than Exhibit 1 then that $139,000 and that 30,000, those numbers are still accurate, in fact, they may be a little bit too high, and those are the numbers that should be used.

(Emphasis added).

Stipulations are binding contracts. *Ryan v. Ryan*, 292 Minn. 52, 193 N.W.2d 295 (1971); *Tomscak v. Tomscak*, 352 N.W. 2d 464, 466 (Minn.Ct.App.1984). When a stipulation is ambiguous and construction depends on extrinsic evidence in addition to the written stipulation, there is a question of fact. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). The McLeod County Board and the district court resolved that question adversely to appellants. On appeal, that finding must be upheld if it is supported by the evidence. *In re Petition of Frank*, 242 Minn. 172, 174, 64 N.W.2d 750, 752 (1954). There was sufficient evidence, given the discretion of the Board, to support its interpretation of the stipulation.

■ 2. Appellants contend the trial court erred in its order of June 10, 1987 by not ordering the project established after finding that benefits exceeded costs. Minn.Stat. § 106A.091, however, permits the trial court to remand following an appeal. The court was concerned that some of the earlier bids had expired. Its decision to remand was reasonable and is affirmed.

### DECISION

The trial court's interpretation of the stipulation between the parties was correct. The trial court did not err in remanding to the county in its order of June 10, 1987.

Affirmed.