Filed Sept. 15, 1886.

---

No. 12,068.

## Hardy et al. *v.* McKinney.

DRAINAGE.—*Act of March 9th, 1875.—Repeal.*—The drainage act of March 9th, 1875, was not repealed by the act of March 13th, 1879, and one petitioning for drainage in 1880 had the option of proceeding under either act.

SAME.—*Appeal from Board of Commissioners.—Trial.*—Under the statute, section 5777, R. S. 1881, appeals from the board of commissioners stand for trial *de novo* in the circuit court. Such appeals suspend all the proceedings had upon questions in issue before the commissioners, and they can not either be used or taken into consideration upon the trial in the circuit court.

SAME.—*Finding and Judgment in Circuit Court.— What Required.*—In appeals to the circuit court in drainage and analogous proceedings, the court or jury trying the same succeed to all the substantial duties of the viewers and reviewers, and the finding or verdict should be sufficiently specific upon every question involved to authorize a judgment finally determining all the matters in controversy.

SAME.—*Remanding Cause to Commissioners.*—For a judgment remanding a cause to the board of commissioners held not sufficient as " an order how to proceed " within the meaning of section 5778, R. S. 1881, see opinion.

SAME.—*Establishment of New on Line of Old Ditch.—Second Assessment.*— Where it is sought to establish a ditch upon the line of one previously constructed, and for which the persons affected by the proposed new ditch had been assessed, such facts may be shown in behalf of the remonstrators.

From the Cass Circuit Court.

*J. A. Sims, J. W. Wallace, J. C. Nelson* and *Q. A. Myers,* for appellants.

*J. Applegate* and *C. R. Pollard,* for appellee.

NIBLACK, J.—On the 31st day of December, 1880, John McKinney filed his petition before the board of commissioners of the county of Carroll, representing that he was the owner of a particularly described tract of land in that county, upon which, and the adjacent lands of Alexander Hardy, Thomas Hardy and William Hardy, there was a shallow and stagnant pond of water, covering for the greater part of each year about fifteen acres of ground; that during wet seasons said pond rendered nearly, if not quite, twenty acres of valuable land unfit for cultivation; that during the summer months such pond was very injurious to the health of the neighborhood; that there was no natural outlet to the pond in question, but that it, together with other contiguous wet land, could be drained by the construction of a proposed and particularly defined ditch, of about two and one-third miles in length; also representing that such a ditch would be conducive to public health and a work of public utility, and praying that proceedings might be taken for the construction of the ditch as proposed.

At a special meeting of the board of commissioners above named, held in January, 1881, viewers were appointed, who, in April following, reported in favor of the construction of a ditch as prayed for by the petition. Notice of the pendency of the petition was thereupon given in accordance with the provisions of the second section of the act of March 9th, 1875, concerning the reclamation of wet lands, and the 8th day of June, 1881, was fixed for the hearing of the matters contained in the petition.

At the time fixed for the hearing, the Hardys entered an appearance, and moved to dismiss the proceeding upon the ground that it had been instituted and prosecuted under the provisions of the act of March 9th, 1875, *supra,* instead of

the later act of March 13th, 1879, then and previously in force; but their motion was overruled. The Hardys then filed a remonstrance against the construction of the proposed ditch; also a claim for compensation. The following were assigned as causes of remonstrance:

*First.* That the proposed ditch is identical with, and in fact the same ditch heretofore established by this board, having the same beginning and the same ending, the same average depth, same slope, and the same fall per mile.

*Second.* That there is now constructed a ditch on the identical line of said proposed ditch, having the same length, depth, and fall per mile of the proposed ditch for the distance of 11,194 feet computed from the terminus of said proposed ditch, which is now in successful operation, and no ditch is therefore necessary or required upon said portion of said line.

*Third.* That all persons mentioned in said petition as being interested in the construction of said proposed ditch, and owning lands liable to be assessed for the construction thereof, have heretofore, by order of this board, been assessed, and most of them have paid such assessment, and can not be again assessed for the same ditch.

*Fourth.* That the construction of said proposed ditch will not be necessary and conducive to public health, convenience or welfare, and will not be of public utility, and is not necessary.

*Fifth.* That all of said proposed ditch, excepting about eighty rods at the upper end thereof, has heretofore been dug and fully completed in accordance with the specifications of said proposed ditch; that the excavation of the said eighty rods of ditch would drain a pond of valuable stock water on the lands of said remonstrants and greatly damage them in the business of stock herding and raising, in which they are largely engaged; that said remonstrants are now constructing a tile ditch by which said pond of water will be drained to another part of their lands, where they can utilize it for

stock water, and wholly remove it from the lands of said
McKinney; that, if removed by the excavation of said eighty
rods of said proposed ditch, it would damage the said remon-
strants in the sum of $2,000; that the construction of said
eighty rods of ditch by the said McKinney, and all others,
has been forbidden and forever enjoined by the order of the
judge of the Carroll Circuit Court, and can not now be con-
structed but in contempt of said order, which order is now
of record, unreversed and unappealed from and in full force.

*Sixth.* That the assessment made by said viewers of $1,-
760.15 for the cost of constructing said proposed ditch is
false and fraudulent in this, to wit, that 11,194 feet of said
proposed ditch is already completed and will cost nothing to
make, and that the eighty rods of said proposed ditch at the
upper end yet to be made would comprise the whole cost of
said proposed ditch, which, according to the report of said
viewers, would not cost more than the sum of $424.85.

Reviewers were thereupon appointed, who reported, in
general terms, against the Hardys, and the board of com-
missioners ordered the establishment and construction of
the ditch.

The Hardys appealed to the circuit court, from which there
was a change of venue to the White Circuit Court, where the
venue was again changed to the Cass Circuit Court. During
the progress of these latter proceedings William Hardy died
intestate, and Mary C. Hardy, his widow, and Wilson A. D.
Hardy, Juniata M. Hardy and William Hardy, Jr., his only
children, were substituted as parties to the appeal.

The Hardys also renewed their motion to dismiss the peti-
tion, and all the proceedings which had been taken upon it,
and their motion was again overruled.

After obtaining jurisdiction of the cause, the Cass Circuit
Court proceeded to try the issues presented by the petition
and the remonstrance, and, after hearing the evidence, made
a finding "for the petitioner, John McKinney, and against the
remonstrators, the Hardys, as to damages." Motions for a

*venire de novo,* for a new trial, and in arrest of judgment, being first severally overruled, judgment was rendered upon the finding as follows : " It is therefore considered, ordered and adjudged by the court, that the ditch described in the petition filed by John McKinney before the board of commissioners of the county of Carroll, * * * * is of public utility; that it will be conducive to the public health ; that the construction thereof will cause no damage to the remonstrants and appellants herein, and that the same ought to be, and is hereby, established in accordance with the prayer of said petition, and the action of said board of commissioners in the premises is hereby confirmed and the cause is hereby remanded to the board of commissioners of the county of Carroll, * * * * who are hereby ordered to take such further steps as by law may be required in the construction of said ditch subsequently to the time the proceedings before said board in this proceeding were arrested by said appeal; and it is further adjudged and decreed that all further steps as against the original appellant, William Hardy, on account of his death pending the proceedings, be now waged against his heirs at law, Mary C. Hardy, Wilson A. D. Hardy, Juniata M. Hardy and William Hardy." This was followed by a judgment against the Hardys for costs, and an order that the clerk should transmit a certified transcript of the proceedings had upon the appeal, together with the original papers, to the board of commissioners of Carroll county. Objections to the judgment were interposed by the Hardys, and exceptions were reserved.

The first question presented upon this appeal is upon the refusal of the circuit court to dismiss the proceeding, and in support of the alleged error of that refusal, it is contended that the provisions of the act of March 13th, 1879, are inconsistent with those of March 9th, 1875, upon which the proceedings in this cause are based, and that, for that reason, the provisions of this last named act are impliedly repealed by the later act of 1879.

The 21st section of the act of 1879 enacts that the act of

"March 9th, 1875, shall not be in any way affected by the pro-visions of this act, but this act and said last mentioned act shall be entirely separate, and neither shall be so construed as to affect or modify the other." In construing that provision in the case of *Yost* v. *Conroy*, 92 Ind. 464 (47 Am. R. 156), this court said: "We think that there is no such irrecon-cilable conflict between the two acts as requires us to hold that the earlier must give way, and the case is, therefore, not within the rule declared in the cases of *Bate* v. *Sheets*, 64 Ind. 209; *Deisner* v. *Simpson*, 72 Ind. 435." Regarding the construction of the clause of the statute, above set out, as the proper construction, it follows that when the petition in this case was filed, the petitioner had the option of proceeding under either the act of 1875 or of 1879, as he might prefer, and that the circuit court did not err in overruling the motion to dismiss the petition, and the intervening proceedings upon it.

The act of 1875 contains a provision that "Any party ag-grieved may appeal to the circuit court as provided by law for appeal from commissioners." The statute then, and con-tinuously since in force, on the subject of appeals from boards of commissioners provided that "All appeals thus taken to the circuit * * * court, shall be docketed among the other causes pending therein, and the same shall be heard, tried and determined as an original cause." 1 R. S. 1876, p. 357, section 36; R. S. 1881, section 5777. Under this provision of the statute it has always been held that appeals from com-missioners stand for trial *de novo* in the circuit court, that is, that all matters in issue before the commissioners stand for trial anew in the circuit court, and not for review or correc-tion as in a court of errors. As a necessary consequence, it has been further held that such appeals suspend all the pro-ceedings had upon questions in issue before the commissioners, and that such proceedings can not either be used, or taken into consideration, upon the trial *de novo* in the circuit court.

These holdings are, as they long have been, the established law of this State. *Molihan* v. *State,* 30 Ind. 266 ; *Mandlove* v. *Pavy,* 33 Ind. 505 ; *McPherson* v. *Leathers,* 29 Ind. 65 ; *Coyner* v. *Boyd,* 55 Ind. 166 ; *Turley* v. *Oldham,* 68 Ind. 114 ; *Green* v. *Elliott,* 86 Ind. 53 ; *Breitweiser* v. *Fuhrman,* 88 Ind. 28 ; *Rominger* v. *Simmons,* 88 Ind. 453 ; *Peed* v. *Brenneman,* 89 Ind. 252 ; *Irwin* v. *Lowe,* 89 Ind. 540 ; *Meehan* v. *Wiles,* 93 Ind. 52 ; *Lowe* v. *Ryan,* 94 Ind. 450 ; *Clift* v. *Brown,* 95 Ind. 53 ; *Thompson* v. *Deprez,* 96 Ind. 67 ; *Stockwell* v. *Brant,* 97 Ind. 474 ; *Bradley* v. *City of Frankfort,* 99 Ind. 417 ; *Thayer* v. *Burger,* 100 Ind. 262 ; *Black* v. *Thomson, ante,* p. 162 ; *Reynolds* v. *Shults,* 106 Ind. 291.

In appeals to the circuit court in causes like the one in hearing, and in all analogous cases, the court or jury trying the same succeeds to all the substantial duties which devolved upon the viewers and reviewers before the board of commissioners as to the matters which stand for trial *de novo,* and a finding or verdict in detail upon all the matters in issue between the parties is contemplated. This includes the assessment of benefits, and the allowance of damages in cases in which damages ought to be allowed. The finding or verdict ought to be sufficiently specific upon every question involved to authorize a judgment finally determining all the matters in controversy, and leaving nothing for the adjudication of the commissioners in the event that the cause shall be certified back to them.

Tested by this rule, the finding in this case was too general and too indefinite to authorize a judgment finally disposing of the cause, and hence was not such a finding as is contemplated by the general law governing such and similar appeals. The circuit court, therefore, erred in refusing to grant a *venire de novo* in the cause. *Jenkins* v. *Parkhill,* 25 Ind. 473 ; *Housworth* v. *Bloomhuff,* 54 Ind. 487 ; *Parker* v. *Hubble,* 75 Ind. 580 ; *Ridenour* v. *Miller,* 83 Ind. 208 ; *Green* v. *Elliott, supra ; Thames L. & T. Co.* v. *Beville,* 100 Ind. 309.

Then, too, the judgment in this case did not, as it could not, supply the defects and omissions in the finding.

The statute on the subject of appeals from commissioners further provides that "Such court may make a final determination of the proceeding thus appealed, and cause the same to be executed, or may send the same own to such board, with an order how to proceed, and may require such board to comply with the final determination made by such court in the premises." R. S. 1881, section 5778.

The judgment in question was not, and did not assume to be, "a final determination of the proceeding" within the meaning of this statute. Nor was that part of the judgment sending the cause back to the commissioners of Carroll county "an order how to proceed" within the statutory meaning of that phrase. On this subject, see the cases of *McPherson* v. *Leathers* and *Mandlove* v. *Pavy*, above cited, and the case of *Sunier* v. *Miller*, 105 Ind. 393.

This cause was tried in many respects as a case upon review merely in an appellate court, and hence not exclusively as an original cause. It was placed and continued upon the docket as "Alexander Hardy and others against John McKinney," instead of "John McKinney against Alexander Hardy and others," as it should have been. This was of itself a harmless error, but it was indicative of an erroneous theory as to the proper *status* of the case in the circuit court. In the class of cases to which this belongs the petitioners are the plaintiffs and the remonstrants are the defendants. *Board, etc.,* v. *Small*, 61 Ind. 318.

The remonstrants offered evidence in support of their first three causes of remonstrance, but the evidence thus offered was excluded. This was also erroneous. It was erroneous for reasons given in the case of *Drebert* v. *Trier*, 106 Ind. 510.

The proposed evidence was also admissible under the provisions of the 15th section of the act of March 9th, 1875, which provides that, under certain circumstances, parties

shall not be assessed the second time for the drainage of the same lands.

The judgment is reversed with costs, and the cause remanded for a new trial.

Filed Sept. 17, 1886.