STATE EX REL. JOHN TIMMERMAN AND OTHERS v. WILLIAM H. COMPTON AND OTHERS.[1]

February 16, 1917.

Nos. 20,224—(294).

**Drain — jurisdiction of county board.**

1. In a proceeding to lay out and establish a public ditch, an order made by a county board, in effect refusing to establish the drainage system asked for in the petition, terminates the power and jurisdiction of the board in such proceeding.

**Same — ditch in another district.**

2. Where a county board refuses to establish the ditch asked for in the petition, it is without authority to establish a ditch wholly within a drainage district other than the one sought to be drained by the ditch petitioned for, though the starting point of the ditch asked for in the petition is within such other drainage district.

[1]Reported in 161 N. W. 378.

Upon the relation of Ralph Hilton and others the district court for Blue Earth county granted its writ of *certiorari* to review the proceedings of William H. Compton and others, as the board of county commissioners of that county, in establishing a certain ditch known as Main B with laterals and branches. After hearing before Comstock, J., the writ was discharged. From the order discharging the writ, relators appealed. Reversed.

*Moonan & Moonan,* for appellants.

*C. J. Laurisch* and *J. W. Schmitt,* for respondents.

QUINN, J.

On December 9, 1914, a petition in due form and signed by several persons owning land likely to be affected, asking for the establishment and construction of a public ditch under the provisions of chapter 230, p. 303, Laws of 1905, and acts amendatory thereof, together with a proper bond, was filed with the county auditor and presented to the county board of Blue Earth county in this state, and the same was designated as "County Ditch No. 37."

Thereafter such proceedings were had that the county board, on January 25, 1915, appointed an engineer and three viewers in the proceeding, who duly qualified, entered upon the discharge of their duties and thereafter filed their reports as required by law. On June 24, 1915, the county board met for the purpose of considering the petition, the reports and evidence adduced. It is not disputed but that all the provisions of the statute relating to the proceeding, such as notices, etc., to the time of the final hearing had been complied with.

There is a watershed extending from the southeast to the northwest across the southeast quarter of section 27 in question. The lands lying to the south of this watershed, and those lying to the north thereof, constitute two distinct and separate drainage districts, the lands lying to the south sloping in a southerly direction for a distance of about two miles to the ravine referred to in the petition, those lying to the north sloping to the northeast for about one and one half miles, to the Le Sueur river in section 23.

The line of the ditch asked for in the petition begins at a point near the center of section 26, crosses the watershed on the northeast quarter

of the southeast quarter of section 27 and then takes a southerly course across section 34, and to the ravine in section 3 in the township to the south described in the petition as its outlet.

Main Line A, as surveyed by the engineer, started at a point on the line of the proposed ditch asked for in the petition, near the center of the southeast quarter of section 27 and immediately to the south of the watershed, thence following the line of the ditch described in the petition to its terminus at the ravine on section three. This line and its branches cover the drainage district to the south of the watershed sought to be drained by the proposed ditch petitioned for. Its total estimated cost was about $27,000, and the estimated benefits to be derived from its construction were far less than that amount.

Main Line B, as established by the county board, begins about 100 rods north of the starting point of Main Line A, and three quarters of a mile due west of the starting point of the ditch petitioned for, at a point on the east and west quarter line of section 27, and extends thence north and northeasterly to the Le Sueur river, on section 23; it nowhere traverses the line of the proposed ditch as described in the petition, nor does it appear that its construction is necessary to the complete drainage of the lands sought to be drained by the ditch petitioned for, or of any part thereof. The estimated cost of the construction of this line and its branches is about $12,500, while the estimated benefits to be derived therefrom are far in excess of that amount.

At its meeting on June 24, 1915, the county board after a full hearing and consideration of all matters submitted to it, resubmitted the entire matter to the engineer and viewers for further consideration and report on July 12, 1915, and adjourned the hearing to that time. On July 12, the hearing was again adjourned to July 14, 1915, when, after further considering the matter, the board made an order refusing to establish that portion of the ditch referred to as Main Line A, and establishing that part referred to as Main Line B.

The relators owning lands assessed for the construction of Main Line B, on August 9, 1915, applied to the district court of Blue Earth county for a writ of *certiorari* to review the proceedings had for the establishment of such ditch. The writ was granted returnable September 25, 1915, at which time a hearing was had thereon, and on March 24,

1916, the district court filed an order adjudging that the relators were not entitled to a peremptory writ and that the respondents were entitled to judgment discharging the alternative writ and for their costs and disbursements. From this order relators appealed.

It is the contention of the relators that the order of the county board establishing such ditch is void and of no effect, for want of jurisdiction and authority on the part of the board to lay and establish the same. Upon the other hand, it is contended that the provisions of section 5526, G. S. 1913, authorizing an engineer in surveying a drainage system to provide for the water to flow in different directions and to provide when necessary for more than one outlet, authorized the laying and establishment of Main Line B and that the board was not without jurisdiction. We do not think the contention of the respondents can be sustained.

It is well settled that in a drainage proceeding, under our statute, the petition is a jurisdictional prerequisite to the authority of the county board to proceed in the matter of establishing a county ditch. A petition, as required by the statute, having been filed, its effect in limiting subsequent proceedings had thereon must be determined from the provisions of the statute. State v. Watts, 116 Minn. 236, 133 N. W. 971.

In the case under consideration the county board, after considering the petition, reports of the engineer and viewers and the evidence adduced at the final hearing, rejected and refused to establish Main Line A, upon the ground that the construction of the same would be impracticable. This act on the part of the board disposed of all there was of the ditch asked for in the petition, it amounted in effect to a complete denial of the prayer of the petitioners and terminated the power and jurisdiction of the board.

The provisions of the statute relied upon by respondents are not applicable to the facts and conditions in this case. The statute provides:

"That the engineer, when it is desirable and practicable and when necessary to the complete drainage of lands likely to be assessed for the ditch originally petitioned for, may provide for the drainage of lands not likely to be assessed for the ditch, orginally petitioned for, by extending the ditch or drain or watercourses beyond the limits named in the petition, or by putting in branches, or by providing that different parts

of such ditch or drain shall flow in different directions with more than one outlet." It is apparent from a reading of this statute that the provision authorizing the extension of a ditch beyond the limits named in the petition, and providing that different parts thereof may flow in different directions with more than one outlet, is intended to apply only when such is practicable and necessary to the complete drainage of the lands likely to be assessed for the ditch originally petitioned for. Such is not this case. Main Line B begins about 100 rods north and across the watershed from where Main Line A begins. It can in no way assist in more completely draining any of the land which would have been drained by Main Line A and its branches. Main Line B and its branches as established constitutes a system by itself.

It follows that the order appealed from should be reversed, and the order of the county board establishing Main Line B and its branches in question vacated and set aside. It is so ordered.