STATE EX REL. JULIUS F. NEPP AND OTHERS v. DISTRICT COURT OF THE THIRTEENTH JUDICIAL DISTRICT IN AND FOR MURRAY COUNTY AND OTHERS.[1]

June 28, 1918.

No. 20,875.

**Judicial ditch — posting of preliminary notice — statutory presumption.**

1. It is not shown that the preliminary notice in a drainage proceeding (required by section 5525, G. S. 1913), was not duly given as found by the court. The posting of three notices in a township is sufficient compliance, even though there be two election districts in the township. The record contains nothing to overcome the presumption given by the statute to the order establishing the ditch, that proceedings prior thereto have been regular, including the giving of notice of final hearing.

**Same — work of engineers.**

2. The work of the engineers appointed was not so improper that it prevented the court from proceeding.

**Same — report of viewers.**

3. There are no such defects in the report of the viewers that the court could not base a finding thereon, when considered with other evidence received at the hearing.

**Same — lateral ditches.**

4. The petition authorized needed laterals.

**Same — certiorari to review order — damages and benefits not reviewable.**

5. On certiorari to review an order establishing a judicial ditch, the amount of damages and benefits to particular lands cannot be consid-

[1]Reported in 168 N. W. 184.

ered. The mode in which they were determined in this instance is not shown to be fatally objectionable.

**Same — railroad not an obstacle.**

6. The presence of a railroad right of way, through which the ditch will pass, is not shown to be an obstacle to the successful carrying out of the project.

**Same — meeting of parties with court not prejudicial.**

7. There was nothing of which relators can complain in the meeting of the interested parties, the engineer, and viewers with the court, after the testimony was closed, to check over the same and make the needful computations.

**Same — record necessary to review order granting ditch.**

8. In order to determine whether or not there is evidence to support the order establishing a ditch there must be a settled case, or else a certificate by the trial court as to the accuracy of the record presented on certiorari.

Upon the relation of Julius F. Nepp and others the supreme court granted its writ of certiorari directed to the district court for Murray county, the Honorable L. S. Nelson, judge of the Thirteenth Judicial district, the Honorable E. C. Dean, acting as judge of that judicial district, and others to review an order of that court establishing Judicial Ditch No. 14. The Chicago, St. Paul, Minneapolis & Omaha Railway Company appeared specially for the purpose of objecting to the jurisdiction of the courts. Affirmed.

*M. J. Harrington, Murphy & Anderson* and *Thomas Kneeland,* for relators.

*Ole Swanjord,* County Attorney, for Murray County.

*J. B. Sheean* and *R. L. Kennedy,* appeared specially for the railway company.

*A. J. Daley,* for respondents.

HOLT, J.

Certiorari to review an order establishing Judicial Ditch No. 14, Murray county, Minnesota.

The numerous errors assigned are grouped and discussed by relators under eight propositions.

1. It is asserted that notice of the preliminary hearing was not served, posted, published or mailed as required by section 5525, G. S. 1913 (before the amending of 1917), and therefore the court never obtained jurisdiction to proceed. An inspection of an affidavit, found in the files returned by the clerk, shows that the first publication was made May 21, 1915, and not May 22, as claimed, and the last, June 4, 1915. Hence the notice was published for three successive weeks. It does not appear that the petition for the ditch located any part thereof in the county of Pipestone nor in any other town than in the two where three notices were posted. The law does not provide that where there are two election districts in a town three notices should be posted in each election district. The notice is not for election purposes, as was the case in Tucker v. Board of Co. Commrs. of Lincoln County, 90 Minn. 406, 97 N. W. 103. As to the mailing of the notice, the law provides that a printed copy of said notice shall be mailed "to all nonresidents of the county whose lands lie within two miles on either side of the routes specified in the petition, whose address is known by him (auditor or clerk) or can be ascertained by inquiry at the county treasurer's office." Relators contend that the right of way of the Chicago, St. Paul, Minneapolis & Omaha Railway Company is crossed by the proposed ditch and it appears that no copy of the notice was mailed to it. To this contention the answer is that no proof was offered that the address of the company, if it be a nonresident of the county, was known to the person required to send the notice. We may take notice of the fact that the address of the owner of this right of way could not well be ascertained by inquiry at the county treasurer's office, for a railway company's rights of way would not be entered amongst the taxable lands. The petition did not call for a ditch in Pipestone county. The fact that the engineer thereafter located some laterals therein cannot affect the jurisdiction, especially since no part of Pipestone county was retained by the court in the drainage project.

The claim is made that the order and notice of the final hearing are so irregular and defective that the court lost jurisdiction. The order for the notice, as originally made, set the hearing for September 20, 1917, at the court house in Slayton, Nobles county, Minnesota. By direction of the court the clerk struck out September 20, and inserted October 4. The palpable inadvertence in locating Slayton in the wrong county

was not corrected in the order, but was properly disregarded. No one could have been misled; for the notice of hearing was duly given by publication for October 4 at the court house, in Slayton, Murray county, and was posted at three public places "in each township where the proposed work is located." This affirmatively appears in the proof returned. The proposed work was not located in Township 146, Range 40, into which County Ditch No. 46 extended and where some parties were assessed for benefits on account of an increased efficacy given ditch No. 46 by Judicial Ditch No. 14. Whether the lands along the ditch No. 46, in the town where notices were not posted, are liable for the benefits assessed, if the owners did not receive notice by mail we shall not now stop to consider, for the evidentiary effect given by statute to the final order establishing the ditch, as well as the return of the respondents herein, indicate that there was proof that all the formalities of the statute had been complied with to give the court jurisdiction to establish the drainage project in hand, and to assess the cost thereof upon all the lands involved herein to the extent of the benefits bestowed thereon. There is probably a defect in the statute in that it does not provide for the filing and the preserving of proof of publication, posting, mailing and serving of the notices called for in the proceeding. Geib v. County of Morrison, 119 Minn. 261, 138 N. W. 24. In that situation, it cannot be assumed that the court below had no other proof than that contained in the files transmitted to this court, and, in the absence of any showing by relators that the statutory requirements were in fact not complied with in respect to the matters claimed, this court cannot hold that the district court lacked jurisdiction. The mere specification of omissions or irregularities in relators' objections, as found in the printed record from pages 38 to 54, was neither proof of the truth thereof nor did it require the petitioners to make a record showing affirmatively that the charges made by relators were untrue. It was sufficient if the proof, in whatsoever form presented, satisfied the trial court that the notice prescribed by the statute had been duly given. In the affidavit of the clerk, that he mailed the notice of the final hearing to the owners of the land affected, the mistake in the year is so obviously a clerical error that no fatal consequences should attach thereto.

There is no proof that the proper bonds were not given by the en-

gineers; and the respondents' return would indicate that such bonds had been furnished, and were, at the hearing, exhibited to the court by relators' counsel.

The insufficiency of the petitioners' bond and the refusal of the court to require an additional bond do not go to the matter of jurisdiction. Nor does chapter 455, p. 759, Laws 1917, stop the proceeding if, where the expenses of the survey have exceeded the amount of the original bond, an additional bond is not forthcoming. The act relates merely to the payment of the cost of the survey by the county.

The fact, if it be a fact, that at the final hearing, a 160 acre tract, not reported by the viewers, was included in the project, cannot avail relators. The owners of that tract of land are not objecting.

2. It is contended that there was such a noncompliance with the statute on the part of the engineers that the court was not warranted in ordering the ditch. We have already alluded to the bond and the effect of chapter 455, p. 759, Laws 1917. There is nothing to show that the oath was not taken. Viewing the work of the first engineer named in this proceeding at this distance from the scene, it would seem that, until further legislation is had, the court would do well to caution the engineer appointed not to extend the drainage survey beyond the territory fairly understood to be designated in the petition, lest petitioners who may have intended and requested only a modest drainage project of a circumscribed marshy flat, awake to find themselves liable on their bond for the cost of an extensive survey of the hills and highlands of adjacent townships to be covered by tiled laterals. But, although alive to the abuse that may result from the workings of the present drainage statutes, we cannot say that in this proceeding there was such a departure by the engineer from the meaning and intent of the law that the project must be abandoned. The petition called for the needful laterals. That more were surveyed than were found proper to be included may challenge the work of the engineer to that extent, but does not oust the jurisdiction of the court, nor prohibit the acceptance of that part of the survey found to be needful and proper in the drainage work petitioned for.

It is insisted that the reports and work of the engineers were such that the court could not base any findings thereon as to cost of construction. We think that relators have failed to make that fact appear. The

reports have been returned, but there is no settled case, nor a certified transcript of all the evidence relating to the work of the engineer, as it was brought to the attention of the court at the hearing.

For the same reason the claim that the cost of bridges is left out must fail. There is no showing that any bridges will have to be erected as a part of and at the cost of the drainage project, or that any other matter is involved so as to make applicable this part of section 5526, G. S. 1913: "An itemized tabulation of all cleaning of obstructions of watercourses, building of flumes, of other wood or masonry work, construction of fences for the protection of the ditch, and construction of bridges or other additional construction work found necessary, together with the estimated cost thereof, and shall make an estimate of the total cost of laying out, establishing and constructing the whole work."

3. The viewers' work is also assailed. Exception is taken to certain descriptions in the report, but we think the defects not fatal. If the finding upon damages and benefits on account of roads is not properly stated, it does not signify. If the parties concerned are not satisfied with the balance allowed by the viewers and approved at the final hearing, a request for a jury trial will afford opportunity for the proper adjustment.

4. Nothing need be said concerning the laterals petitioned for. State v. Nelson, 137 Minn. 265, 161 N. W. 714, 163 N. W. 510, approves the form of the petition in that respect in the instant case. We are not in a position to review the action of the trial court with regard to the laterals. He inspected the land in company with the attorneys and the engineering experts. A mere inspection may be sufficient to balance the oral testimony in favor of the laterals permitted to remain.

5. Whether benefits and damages were awarded according to law, because no proper consideration was given to the need of the particular lands for drainage, we need not concern ourselves with on this appeal. The statute provides that a person aggrieved either as to damages or benefits may have a jury trial, and there was in the work of the viewers no such departure from the mode prescribed that, on this record, it may be said that the final order establishing the ditch should be annulled.

6. It is urged that no right has been acquired by the proceeding to cross the right of way of the railway company, therefore there will be no

outlet for the water collected in the ditch, and the whole project must fail. The railway company did not take part in the proceeding, and the order establishing this drainage system should not have been made if it is made to appear that the ditch will not be allowed to cross the right of way of the company. We are not disposed to determine, in the absence of the railway company, whether the publication and posting of the preliminary notice subjected the lands, through which the ditch as described in the petition was to run, to the jurisdiction of the court, for it is not deemed necessary. It is incumbent on relators to show that the attitude of the company, or the location of its right of way, will render the drainage ineffectual. The company may be willing to co-operate in the drainage; the creek or natural watercourse may so pass across the right of way as not to obstruct water carried in the ditch.

7. After the testimony was taken the court set a subsequent day when, at Fulda, he would meet the attorneys for petitioners, the objectors (the relators), the engineer and the viewers, for the purpose of making computation and checking the evidence taken. The parties met, except the attorney for the objectors who had agreed to be present, but no evidence was taken at that time. We think the respondents' return shows conclusively that there was no irregularity here of which any just complaint can be made.

8. The last contention is that no legal basis exists for the order establishing the ditch. Upon this point, which is a challenge to the sufficiency of the evidence, relators are at a disadvantage because of an imperfect record. The court refused to allow the case proposed. In drainage procedure no provision is made for the settlement of a case to be used on certiorari; but in order for the appellate court to pass upon the sufficiency of the proof, if there be no settled case, there must be a certificate from the trial court that the transcript, or whatever else is tendered upon the appeal as a statement purporting to embody the evidence offered or received, is correct. This is indicated by State v. Nelson, supra. We may however say, in this instance, that even upon a consideration of the stenographic transcript, found in the files returned by the clerk, can it be held that there is no evidence supporting the order establishing this drainage work. There is, to be sure, testimony from certain relators that their lands are not in need of drainage and would not be benefited at all,

or to but a fraction of the amount found by the viewers and approved by the court. But, in addition to testimony to the contrary, the court inspected the lands affected, and was by reason thereof in much better position than this court to reach the right conclusion both as to the whole drainage project and the individual tracts of land embraced therein.

In view of the rapid increase in the cost of labor and material, it may well be that when bids on the construction of this work are received, the cost will appear to exceed the estimated benefits; in which event, no contract can be let. And the question will then be met as to the responsibility for the heavy preliminary cost. The final outcome of the many demands for jury trials, as to the benefits assessed and damages awarded, may also stop the work if it results in reducing the benefits conferred below the total cost of construction. This suggests the care with which drainage proceedings should be conducted so as not to leave in doubt, at any stage of the proceeding, who will be ultimately chargeable with an expense as it is being incurred. In the instant case, though the bond was but for $1,000, the engineer undertook a survey taking two years and costing many times the amount of the bond. In addition thereto are large amounts for printers' fees, viewers' fees, and incidentals.

We find no legal ground for reversing the order made.

The writ must be quashed and the order stand affirmed.