## STATE EX REL. J. M. LOW AND OTHERS v. DISTRICT COURT OF THE THIRTEENTH JUDICIAL DISTRICT AND OTHERS.[1]

May 29, 1924.

No. 23,958.

**Order in drainage proceeding reviewable by certiorari.**

1. An order of the district court merging 6 public drainage systems and several private tile drains, under the provisions of section 5605, G. S. 1913, as amended by chapter 441, Laws 1917, *held* to be such a final order as may be reviewed by certiorari.

**Natural swale construed to be a watercourse.**

2. A natural swale which furnished a runway for the waters from 3 shallow lakes, but which was artificially straightened and deepened and has so continued for over 10 years, *held* to be a watercourse within the meaning of the drainage statute.

[1] Reported in 199 N. W. 883.

**When act of 1917 becomes operative.**

    3. Chapter 441, Laws 1917, providing for the consolidation of several drainage systems in one drainage area, having a common outlet through a watercourse, becomes operative only when the outlet ceases to be adequate, overflows and thereby causes the inundation of adjoining lands.

**What that statute authorizes.**

    4. This statute authorizes the repair, modification or extension of drainage systems already constructed only insofar as it becomes necessary to improve and make adequate the outlet and prevent the inundation of adjoining lands.

**Petition and proof sufficient.**

    5. The petition states a case for procedure under the consolidation statute, and was sufficiently signed. The proofs were sufficient to sustain a finding that the proposed improvement will be a public benefit.

**Finding sustained by evidence.**

    6. The proofs were sufficient to sustain a finding that the added waters from the several drainage systems and private tile drains contributed to the inundation of adjoining lands.

**Rejection of testimony reviewable by certiorari.**

    7. Errors in the rejection of testimony may be reviewed upon certiorari. The rejection of testimony bearing upon the probable cost of the merging of the proposed drainage systems, *held* to be error for which another hearing must be granted.

Upon the relation of J. M. Low and others the supreme court granted its writ of certiorari directed to the district court for Murray county and the Honorable L. S. Nelson, judge thereof, and another, to review proceedings in that court for the consolidation of six public ditches. Reversed.

*F. W. Murphy, Freedman & Smith* and *M. J. Harrington,* for relators.

*E. H. Nicholas,* for respondents.

QUINN, J.

Certiorari to review a proceeding in the district court of Murray county, for the consolidation of 6 public ditches, under the provisions of section 5605, G. S. 1913, as amended by section 17 of chapter 441 of the General Laws of 1917. A hearing was had upon a petition, after due notice, at which all persons interested were given an opportunity to be heard. Whereupon the court made and filed an order consolidating all of said drainage systems, and appointing an engineer to make such surveys, plans, estimates and reports as might be necessary to effect the object of the petition.

The drainage area herein referred to has its beginning near the north line of section 34, township 108 north, range 42 west, in Murray county, and extends south across township 107 north, range 42 west, and to Beaver creek, near the south line of section 4, township 106 north, range 42 west. This drainage area is several miles in width and embraces a number of shallow, meandered lakes, including Rush lake, on sections 34 and 35, in township 108; Bear lake in sections 3, 4, 9, and 10, township 107; and Great Oasis lake in sections 15 and 16, in said township. County Ditch No. 20 is about 8 feet wide at the bottom and of considerable depth. It is about 10 miles in length, and extends from its source at the north edge of Rush lake, south through each of the lakes named, through the center of the drainage area, and finds its outlet in Beaver creek, on the southerly side of section 4, township 106, range 42. This ditch follows a depression, or natural watercourse through the entire drainage area. The natural flow of all the waters from this area was towards these lakes and thence down the depression followed by Ditch No. 20, and finally into Beaver creek. In the construction of that ditch in 1912, the natural runway was deepened and straightened, but the general direction of the flow of water was not changed, the same for a number of years furnished an adequate drainage for the lake beds, and the waters have continued to flow therein ever since.

In 1914 a public tile drainage system known as County Ditch No. 38 was constructed by the county board. This system has its

source in section 29-107-42, and terminates in Number 20 on section 33.

In 1915 a public drainage system consisting of an open ditch with a number of tile laterals, known as County Ditch No. 41 was constructed. This system has its source in section 27, extends in a northerly direction, and reaches the main line of Number 20 on the north line of section 16.

In 1916 another public drainage system known as County Ditch No. 9 was constructed. It has its source in section 18, extends in an easterly direction, and enters Number 20 on section 16.

In 1917 Judicial Ditch No. 19 was constructed. It has its source in section 18, extends in a southerly direction, and enters Number 20 in section 5, township 106.

Later in 1917 a public drainage system known as County Ditch No. 53 was constructed. It has its source in section 25, extends in a southwesterly direction, and reaches No. 20 near its source.

In addition to the above public systems, a large number of private tile drains were constructed in this drainage area, several of which terminate before reaching No. 20. The waters from these systems and private drains all reach No. 20 either directly or by overflow and seepage, thereby causing its overflow at times and the inundation of adjoining lands. In 1919, after the overflow of that season had receded, a petition was presented to the county board asking for the repair and extension of the several public systems, the estimated cost of which was something over $488,000. This project never came to final hearing. Subsequently the petition now under consideration, asking for the consolidation of the several systems and private drains, was filed. The cost of the merger has never been estimated, presumably because no engineer's report has as yet been made in this proceeding.

At the hearing below, considerable testimony was taken, and the court made and filed an order to the effect that the several drainage systems and private drains be merged and consolidated. Respondents now ask that the writ herein be quashed because it was prematurely and improvidently issued. In this respect it is urged that the proceeding for consolidation is still pending in the

district court, that no final order has been made, and that the order sought to be reviewed is an intermediate order and not final. We do not concur in this contention.

The order recites that the 6 systems and the private drains, "be and the same hereby are merged and consolidated into one drainage proceeding and system, and that said drainage system, as so consolidated, shall be known by the title and number of Judicial Ditch Number 30 of Murray county, Minnesota." This order, if of any force whatever, consolidates such systems for the purpose of drainage outlet and for no other purpose. Insofar as the merger and consolidation goes, it is a final order. Further proceedings for the purpose of providing ways and means of carrying this merger into effect may be necessary, but that will be done under another notice and a further hearing. The order of consolidation is not appealable. It is reviewable by certiorari. The order of assessment for the purpose of carrying the proceeding into effect is appealable. G. S. 1913, § 5552, subd. 7, p. 1224. The consolidation is effected under section 5605, while the ways and means must be under sections 5557-5559, G. S. 1913. The order of consolidation is entirely separate from the order of assessment. Each is complete in itself and distinct from the other. The consolidation statute becomes operative only where there is need for the merging of several ditches within one drainage area, the waters from which have a common outlet in the watercourse, and which causes or is likely to cause the overflow of such outlet and the inundation of adjoining lands. This statute authorizes the repair, extension or modification of drainage systems already constructed only insofar as it becomes necessary to improve and perfect a proper drainage outlet.

It is urged that the petition is insufficient to give the court jurisdiction because it appears upon its face that Ditch No. 20 is not such a watercourse as contemplated by the statute. We find no merit in this contention. An artificial channel may become a watercourse, within the meaning of the statute, by the mere lapse of time. San Gabriel Valley Country Club v. Los Angeles County, 182 Cal. 392, 188 Pac. 554, 9 A. L. R. 1200. Prior to the construction of Number 20, there existed a swale along its present

course for the water from the lake beds. Ditch No. 20 has now existed for such a period of time that the manner of its creation is immaterial. Reading v. Althouse, 93 Pa. St. 400; Stimson v. Inhabitants of Brookline, 197 Mass. 568, 83 N. E. 893, 16 L. R. A. N. S.) 280, 125 Am. St. 382, 14 Ann. Cas. 907; Matheson v. Ward, 24 Wash. 407, 64 Pac. 520, 85 Am. St. 955; Meir v. Kroft, [Iowa] 80 N. W. 521.

The petition shows a cause of procedure under the consolidation statute. It was sufficiently signed. The repair statute, section 5552, as amended by section 6 of chapter 300, p. 434, Laws of 1915, has no application to a proceeding under such a petition. That statute was intended, as it clearly provides, to furnish a means of repairing, cleaning, enlarging or extending a drainage system to the end that it might serve its original purpose, while the statute here under consideration has to do only with the consolidation of different systems in the same drainage area for the improvement of the common drainage outlet. Under it there can be no improvement nor enlargement of any system other than is necessary to accomplish the proper outlet for such systems through such watercourse. State v. Nelson, 145 Minn. 31, 176 N. W. 181.

Under the repair and extension statute, the improvement must be paid for from the fund to the credit of the particular drainage system, if it be sufficient; otherwise there may be an assessment upon the basis of the original levy in that particular system. Section 5552, G. S. 1913, as amended by chapter 300, p. 425, Laws 1915. State ex rel. Kolars v. County Board, 151 Minn. 274, 186 N. W. 709. The consolidation statute provides that, where one or more ditches shall have been constructed, the waters from which empty into any creek, draw or watercourse, and thereby cause the overflow of the same and the inundation of adjoining lands, then and in that event, there may be a consolidation for the purpose of improving such outlet and preventing such inundation, and to that end the court may make an order merging and consolidating all of such ditches, and giving to such proceeding a title and number by which it shall, in all subsequent proceedings, be designated. Section 5606, G. S. 1913. The purpose of this statute, in requiring

a new number and title by which the proceeding shall be designated in all subsequent matters, has reference only to such proceedings as relate to the procuring and maintenance of a proper outlet. It is not the purpose of the consolidation statute to provide for improvements or extensions. Such a scheme might work untold injustice. For instance, suppose, as in the instant proceeding, that after the merger was carried into effect, a string of 1,000 tile should break in Judicial Ditch No. 16 which is some eight miles below No. 53, should the latter system be assessed for the repair of such tile, and if so upon what basis?

It is not believable that such was the intention of the legislature in adopting the statute under consideration. Yet such might be the result were repair work to be done under its provisions.

The only remaining question of importance is whether relators were deprived of a full and fair hearing at the consolidation hearing. We are of the opinion that they were. The important matter to be determined at such a hearing is whether the proposed merger will be practical, and if so, the reasonable cost of the undertaking. The exact plan to be adopted for the improvement cannot be determined at such a hearing. The incoming of the engineer's report is necessary. However the law contemplates that, if there be a merger, the task of carrying it to completion must be done in a workmanlike manner, and the plan of the improvement suitable for the purpose sought. The probable and reasonable cost enters directly into the practicability of the undertaking. All of these matters should be taken into consideration in determining whether or not there should be a merging. As bearing upon that question, the interested parties should be allowed to present such proof as they may be able to procure, as to the probable expense of the undertaking. While it may not be possible to know just what plan of improvement will be adopted, yet it must be a reasonable, suitable and substantial plan. Upon such a basis the interested parties were entitled to be heard and to have their proof considered in determining the feasibility of merging the systems. Their proffered proofs bearing upon this phase of the undertaking were rejected. This was error.

The object of the merger is to procure a proper outlet for all the drainage, through the present watercourse, and at the same time do away with the inundation of the adjoining lands. The question is not what the expense for the improvement might be, according to some plan that may be suggested by some certain individual or engineer, but what would be the reasonable and probable cost of a reasonably good and sufficient plan. Others might arrive at such an estimate quite as accurately as might the official engineer, and of course the court would be greatly assisted thereby in concluding whether there should be a merger.

It may not be out of place to remark that we are somewhat at a loss to understand how the waters from Judicial Ditch No. 19 and County Ditch No. 38 can in any way contribute to the inundation of the lands of the petitioners. We understand counsel to concede that the outlet from the points where these systems connect with No. 20 is sufficient to carry all waters that reach that locality. If this be true, then those systems should not be included in the merging.

We find no merit in the contentions that there is not sufficient proof that the added waters from the several systems and private drains contributed to the inundation complained of, nor that the proofs failed to show that the improvement asked for in the petition, if carried into effect, would be a public benefit. Because of error in the rulings as to the reception of testimony, which may be considered upon certiorari, as above indicated there must be a reversal.

Reversed.