# IN RE JUDICIAL DITCH NO. 9, COUNTY OF BIG STONE.[1]

April 1, 1926.

No. 25,255.

**Trial de novo on appeal from denial of county board to establish ditch.**

1. On appeal from an order of the county board refusing to establish a county ditch, the court tries and determines the matter de novo, and has jurisdiction to establish the ditch and to conduct all further proceedings for carrying its judgment into effect.

**Petition complying with statutory requirements necessary to confer authority to establish county or judicial ditch.**

2. A petition signed as required by the statute and stating the facts required by the statute to be set forth therein is a jurisdictional prerequisite to the authority to establish either a county or a judicial ditch.

**Proceeding is in rem, and ditches to drain other territory than that affected by proposed ditches cannot be constructed.**

3. The petition gives jurisdiction to construct the ditches described therein and to make such changes in the proposed ditches and such additions thereto as may be necessary to afford complete drainage to all lands likely to be assessed for the construction of those described in the petition, but the proceeding is in rem, and the petition does not give jurisdiction to construct additional ditches to drain territory not affected by those petitioned for.

**Court without jurisdiction over territory not described in original petition.**

4. The proceeding in question as extended provides for the construction of ditches to drain an extensive territory over which the court had no jurisdiction.

Drains, 19 C. J. p. 631 n. 14; p. 637 n. 14; p. 641 n. 62; p. 673 n. 42.

Application by Big Stone county for writ of prohibition restraining the Honorable S. A. Flaherty, judge of the district court for that county, from exercising further jurisdiction in proceedings for Judicial Ditch No. 9. Writ to issue.

[1]Reported in 208 N. W. 417.

*Freeman & Smith* and *Charles F. Bolsta,* County Attorney, for petitioner.

*F. L. & E. V. Cliff* and *Murphy & Johanson,* for respondents.

TAYLOR, C.

This is an application by the county of Big Stone for a writ prohibiting the district court of that county from exercising further jurisdiction in certain drainage proceedings now known and designated as Judicial Ditch No. 9.

A petition for the construction of a county ditch was presented to the board of county commissioners of Big Stone county in 1911, and the board made an order establishing the ditch and designating it as County Ditch No. 9. Certain objectors appealed to the district court which reversed the order of the board on the ground that the proceeding contemplated the drainage of a meandered lake not within the class permitted to be drained. The petitioners appealed to this court which affirmed the judgment of the district court, but said that the board was free to proceed with the project in the way and to the extent authorized by the statute. Mundwiler v. Bentson, 128 Minn. 69, 150 N. W. 209. The county board again considered the petition, and in March, 1915, made an order denying it and refusing to establish the ditch. The petitioners appealed to the district court. The appeal came on for trial before the court on May 15, 1916, and on that date the petitioners and the objectors who appeared at the hearing, through their respective attorneys, entered into a lengthy stipulation by which the objections to the ditch were withdrawn on condition that the changes agreed upon therein should be made in the drainage plan and in the procedure to be followed.

The original petition presented to the county board asked for a ditch beginning near the center of the south line of section 7 in township 123 of range 45 and running in a general southerly direction to a terminus on the south line of section 25 in township 122 of range 46. It passed through Bentson Lake and, as proposed, something less than a third of it was south of that lake. The petition also asked for two branches entering the main ditch from the west.

The stipulation provides, among other things, that

"The main ditch shall consist of a ditch running from the outlet of Bentson Lake to the terminus of said ditch, and all other ditches connecting thereto, directly or indirectly, shall be treated and considered as branches, and in the distribution of the cost of construction of said ditch, each branch shall be assessed for the cost of the construction of said branch and for its proper proportionate share of the general expenses of the construction of the main ditch, constituting the common outlet, and that property lying along one branch shall not be assessed for the construction of another branch with which it is not connected and, further, that by reason of the fact that a large area not connected with the present main ditch but properly connectable therewith, in the form of other branches, the overflow water from which must eventually be drained through the same common outlet, it is agreed that such territory shall be added to the present system, to the end that all the territory that must be drained through the same common outlet shall be added to the present ditch or general outlet, and given relief in this one proceeding, so that all land furnished outlet and supplied with drainage shall pay its proper, proportionate share of the construction of said ditch."

The stipulation further provided that S. B. Gardner should be appointed as engineer in the place of the former engineer who was ill, and that new viewers, named therein, should be appointed in place of viewers theretofore appointed by the commissioners. It further provided that the portion of the original ditch lying north of Bentson Lake should be designated as branch No. 2 and that laterals should be extended therefrom to drain other lands which had "not been but should be included within these proceedings."

It further stated that there is a large area of wet and overflowed lands lying to the east and northeast of the main ditch and of this branch, a large portion of which is within the same watershed, and provided that the engineer should proceed to survey and investigate all such lands and report the results thereof to the attorneys

"to the end that proper petitions may be made and such other proceedings regularly had as shall be required under the law to bring about the addition of said laterals and branches to the ditch heretofore reported by the engineer as shall be necessary, and the order of this court shall be entered directing said engineer to proceed accordingly, it being understood that the said engineer is to report to this court and said attorneys whether in his judgment other branches or laterals should or should not be added."

It further provided that the engineer should report such changes in the main ditch as he deemed necessary to enable it to carry off all the water which would come into it from the branches already proposed and from all other branches which might be added.

It also provided that the court should

"Enter such order in pursuance of this stipulation as may be necessary to carry the same into effect and proceed with the establishment of the ditch."

The court made a lengthy order pursuant to and in accordance with the stipulation, and among other things ordered the county auditor to deliver all the files, papers and proceedings in the matter to the clerk of the court, and ordered that the ditch be known and designated as Judicial Ditch No. 9. This order is dated May 15, 1916.

Pursuant to the order of May 15, 1916, the engineer made a survey and filed a report which came on for hearing on June 26, 1919. No objections were made to the plan of drainage proposed therein, and the court on July 3, 1919, made an order in which it found that the proposed drainage system as changed, enlarged and modified as recommended by the engineer in his report and outlined in the map accompanying the report, was practicable and would be of public benefit and promote the public health, and ordered that the proposed drainage system should be and "that the same is changed, enlarged and modified in accordance with the said map and in accordance with the report of the engineer in connection with and accompanying said map."

The map was attached to and made a part of the order.

The order, after quoting a paragraph from the engineer's report to the effect that the branches proposed therein would not' afford drainage to all the lands in need thereof and that other branches should be added to afford such drainage, states that

"the court finds and determines that all land within the drainage system as shown by the map and report of the engineer should be provided with the necessary drainage, and the engineer is hereby ordered and directed to make provision for the proper drainage of all lands within the drainage system * * * with the understanding that the plan of the drainage system, as * * * confirmed and approved by this court, shall not be changed in any material respect."

The order further states that the engineer "is hereby ordered and directed to immediately proceed to make a detailed survey and furnish all necessary plans and specifications for the said drainage system, and make due report thereof to this court with all reasonable dispatch."

The engineer proceeded under this order and made his final report in November, 1920. While we are not informed of the contents of this report, it apparently added branches not included in the former report, for it is claimed without contradiction that the court made an order (not in this record) requiring the engineer to amend his final report by eliminating certain territory therefrom for the purpose of making it conform with the order made on the former report.

The questions presented are whether an appeal from an order of the county board refusing to establish a county ditch gives the court jurisdiction not only to establish the ditch but to conduct all subsequent proceedings for carrying out the project, and whether the court has jurisdiction to change and enlarge such a project in the manner and to the extent disclosed in this proceeding.

In McMillan v. Bd. of Co. Commrs. 93 Minn. 16, 100 N. W. 384, wherein an appeal had been taken from an order of the county board refusing to establish a county ditch, it is said:

"No provision having been made by law for further action by the board of county commissioners, we are also of the opinion that the

legislature must have intended to confer upon the court jurisdiction to try and determine de novo all the issues of fact and law originally presented to said board under such rules of practice and procedure as are adaptable to proceedings of a similar nature."

This statement is quoted with approval in Schumacher v. Bd. of Co. Commrs. 97 Minn. 74, 105 N. W. 1125. In County of Martin v. Kampert, 129 Minn. 151, 151 N. W. 897, it is again stated that where an appeal is taken from the refusal of the county board to establish a ditch, the matter is to be tried de novo in the district court.

As the trial is de novo, the questions involved are to be determined by the court to which the appeal is taken without regard to the action taken by the county board and as if the proceeding had originated in that court. The statute having made no provision for remanding the proceeding to the county board, it must be deemed to have intended that the court should have jurisdiction to do whatever may be necessary or appropriate to carry the proceeding to a final conclusion. That the legislature concurred in that view is manifested by the concluding paragraph of G. S. 1923, § 6680 (L. 1917, p. 701, c. 441, § 6), which provides that:

"It shall be the duty of the court in the case of *all* ditches established by it to cause all contracts entered into under the provisions of this section to be carried into effect and to cause all ditches and drains so contracted for to be constructed according to such contracts and the plans and specifications of the engineer; and it shall be the duty of the county board in the case of all ditches established by it, in like manner, to cause all such contracts to be carried out as above provided."

Under a somewhat similar drainage law, but which contains a provision that "the court to which such appeal is taken shall have the power to hear and determine such matters as if it originated in such court," the Indiana court ruled that it is the duty of the court to determine all the questions involved and render a final judgment in the matter. Miller v. Wabash R. Co. 171 Ind. 109, 85 N. E. 967; Bonfoy v. Goar, 140 Ind. 292, 39 N. E. 56; Sharp v. Malia, 124 Ind. 407, 25 N. E. 9; Hardy v. McKinney, 107 Ind. 364, 8 N. E. 232. The

Indiana statute also provides that the court may cause its judgment to be executed or may send it to the board and require that body to comply with it, and the court held that the trial court must make a final determination of the cause as an original cause, and may then either execute its judgment or send it to the board with directions to carry it into effect.

We are of opinion and hold that the appeal in question vested the court with full jurisdiction over the ditch petitioned for, and imposed upon it the duty to make a final determination of the entire matter and to cause such determination to be carried into effect. Our statute authorizes the construction of both county ditches and judicial ditches and provides similar and nearly identical proceedings for establishing and constructing them, except that one is under the jurisdiction of the county board and the other under the jurisdiction of the court. The statute prescribes substantially the same procedure for the construction of a public ditch, whether it be established by the county board or by the court, and the fact that the court designated this as Judicial Ditch No. 9 after it came under the jurisdiction of the court, instead of continuing the original designation of County Ditch No. 9, was not a material change, and doubtless served to avoid confusion among the numerous landowners affected as to the tribunal before which the matter was pending.

Whether the court had jurisdiction to change and enlarge the project in the manner and to the extent shown by its orders of May 15, 1916, and July 3, 1919, presents a more serious question.

The petition asked for a ditch extending north from Bentson Lake about six miles and south from that lake about three miles. It also asked for two branches—one some six or seven miles in length beginning about three miles west of the main ditch and entering it between Bentson Lake and the terminus, the other less than a mile in length beginning in some sloughs lying between the first branch and the main ditch and entering the main ditch above Bentson Lake. It did not ask for any branches entering the main ditch from the east and did not provide drainage for any of the territory lying to the east except as afforded by the main ditch itself. By the orders of May 15, 1916, and July 3, 1919, that part of the original ditch

extending from Bentson Lake to the terminus is made the main ditch and designated as the outlet. That part of the original ditch lying north of Bentson Lake and comprising about two-thirds of the main ditch as petitioned for is made a branch and designated as branch No. 2. Several branches or laterals are added to this branch—some on the west, but the more extensive on the east. The length of the new branches extending from branch No. 2 into the territory lying to the east and northeast of it is greater than the entire length of the ditches described in the petition. A ditch is also established which begins at a point more than four miles east and two miles north of the starting point of the original main ditch, runs southerly nearly parallel with the original main ditch and about five miles east therefrom for a distance of some nine miles, then turns westerly, and enters the main ditch or outlet between Bentson Lake and the terminus. This single ditch or branch with its tributaries requires the construction of a greater length of ditch than the entire original project, and the territory to be drained by it is clearly outside the territory which would be affected by the ditch petitioned for.

As the map attached to the court's order of July 3, 1919, is the only part of the engineer's report furnished us, it is our only source of information as to the specific changes made and the extent of them. Perhaps the fact that the county issued warrants in the sum of $1,993.80 for the expense incurred in the original proceeding and has issued warrants in the sum of $14,870.47 for the expense already incurred in the enlarged proceeding, may be some indication of the relative magnitude of the two projects.

Under the drainage law a petition, signed by a specified number of qualified petitioners, setting forth the necessity for a proposed ditch, its starting point, general course, terminus and certain other matters specified in the statute, is a jurisdictional prerequisite to the authority to establish the ditch. The petition (other proceedings being regular) gives jurisdiction to establish and construct the ditch or ditches described therein, and also to make such changes in the plan of the proposed ditch or ditches and such additions thereto as shall be found to be necessary to afford complete drainage to all

lands likely to be assessed for the construction of the ditch or ditches petitioned for.  But it does not confer jurisdiction to establish and construct additional ditches for the purpose of draining lands which would not be affected by the construction of the improvement described in the petition and would not be assessed therefor.  State ex rel. v. District Court, 131 Minn. 43, 154 N. W. 617; State ex rel. v. Compton, 136 Minn. 143, 161 N. W. 378; State ex rel. v. Nelson, 137 Minn. 265, 161 N. W. 714, 163 N. W. 510; State ex rel. v. District Court, 140 Minn. 375, 168 N. W. 184; State ex rel. v. Nelson, 145 Minn. 31, 176 N. W. 181; In Re Judicial Ditch No. 12, 147 Minn. 290, 180 N. W. 119; In Re Judicial Ditch No. 6, 156 Minn. 95, 194 N. W. 402; Jensen v. Bd. of Co. Commrs. 159 Minn. 140, 198 N. W. 455; State ex rel. v. District Court, 159 Minn. 428, 199 N. W. 883; State v. McGuire, 109 Minn. 88, 122 N. W. 1120.

It clearly appears that the original proceeding was expanded to provide a drainage system for a large area outside the original project and which had no connection therewith except that the water therefrom was to be discharged into or through the same outlet. The ditch petitioned for would not benefit or affect the lands in that area and they could not be assessed for its construction.  Establishing ditches for the drainage of such an area was beyond the jurisdiction conferred by the petition.  The parties to the stipulation recognized this fact, for they provided that the engineer should report to them the result of his investigations to the end that proper petitions might be made and such further proceedings be taken as should be necessary to accomplish the desired changes.  But no new petitions were made and no new proceedings were taken to acquire jurisdiction over the new territory within which the additional ditches proposed were to be constructed.

The respondents urge that the stipulation should be considered as a new petition.  It does not purport to be a petition and was not intended as such at the time it was made.  It was signed only by the attorneys of the respective parties who appeared for the purpose of advocating or opposing the establishment of the original ditch. It does not set forth fundamental and essential facts required by the statute to be set forth in the petition for a ditch.  By it those

who had theretofore opposed the construction of the original ditch withdrew their opposition "upon the terms and conditions" therein stated. While those who were parties to it might be precluded thereby from thereafter attacking the validity of the proceedings taken under and pursuant to it, the stipulation could not give jurisdiction in rem over the extensive new territory sought to be added. That could be acquired only by complying strictly with the requirements of the statute.

The viewers appointed by the court made no report and are now disqualified from acting. The warrants issued by the county for expenses already incurred in the amended project together with accumulated interest thereon exceed $25,000 in amount. Stating that new viewers were about to be appointed for the purpose of making and reporting an assessment (which is admitted), and that this would entail a large additional expense, for the payment of which the county would be required to provide funds, and that the expense for which the county is already liable exceeds the amount of the bonds given as security therefor, the county instituted this proceeding, asserting that the court was without jurisdiction to establish or construct the proposed improvement. The proceeding for making the improvement is a proceeding in rem and we are constrained to hold that the court was without jurisdiction to construct that portion of the improvement contemplated by its orders of May 15, 1916, and July 3, 1919, which lies outside the purview of the petition. It has jurisdiction to construct the improvement asked for in the petition, and to make such changes in the proposed plan and such additions thereto as may be necessary to give complete drainage to all lands likely to be assessed for the construction of the ditch and branches petitioned for, but in the absence of any other or further petition the jurisdiction conferred upon it extends no further.

Let a writ issue prohibiting the court from exercising jurisdiction to construct a system of drainage for that part of the territory included in the orders of May 15, 1916, and July 3, 1919, which will not be affected by the construction of the ditch and branches asked for in the petition.